[Civ. No. 12347. First Dist., Div. One. Aug. 23, 1943.]

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), as Administrator, etc., et al., Appellants, v. TOWN OF ATHERTON et al., Respondents.

Dinkelspiel & Dinkelspiel, I. M. Peckham and Edmund Scott for Appellants.

Albert J. Dibblee and Ross & Ross for Respondents.

KNIGHT, J.—The plaintiffs herein are respectively the administrator of the estate of Harry R. Fee, deceased, an heir at law of the deceased, and the assignee of an undivided one-quarter of the interests of three other heirs at law. As such they brought this action against the town of Atherton, a municipality of the sixth class, its mayor, councilmen, and chief of police, for the purpose of having declared unconstitutional and void a zoning ordinance embodying certain building restrictions, insofar as the ordinance purported to affect the tract of land described in the complaint which belongs to the estate of the decedent. Plaintiffs also ask for a permanent injunction to enjoin the enforcement of the ordinance against the estate's property. The trial court held that plaintiffs did not have capacity to sue, and upon that ground sustained the demurrer to the complaint without leave to amend. From the judgment of dismissal entered thereon plaintiffs appeal.

Section 573 of the Probate Code authorizes an administrator to maintain an action to quiet title to real or personal property belonging to the estate, or to determine any adverse claim thereon; and section 581 of the same code provides that the heirs may themselves or jointly with the executor or administrator maintain an action to quiet title to real property belonging to the estate against any one except the executor or administrator, but that they are not required

so to do. The question here involved is whether the present action may be construed as an action to quiet title.

On demurrer all of the allegations of the complaint are deemed to be true, and according to the allegations of the complaint herein the provisions of the ordinance not only unreasonably and unconstitutionally restrict and limit the use of the property so as to obstruct the power and right to sell or lease the same, thereby, so the complaint alleges, placing a cloud on the title, but they also have the direct effect of greatly depreciating the value of the property. Plaintiffs contend, therefore, that to all intents and purposes the action is one to quiet title, which, under the code sections above cited, they are authorized to maintain. We are of the opinion that the position so taken by plaintiffs must be sustained.

In brief, the following are the facts as they appear from the allegations of the complaint: The ordinance as amended divides the town into two zones, residential and commercial; and the residential zone is divided into three areas, A, B and C, for which certain building restrictions are established. The Fee estate property is a parcel of unimproved and vacant land situate on the corner of Selby Lane and El Camino Real. It has a frontage on El Camino Real for a distance of 637.56 feet and runs back to a depth of 393.15 feet, and is located within area A of the residential zone so that by virtue of the provisions of the ordinance it may not be utilized for any commercial purpose; and any residential structure erected thereon must conform to the building restrictions prescribed for that area. Among those restrictions are that all dwellings erected therein must have a yard 20 feet wide on each side, a rear yard of 30 feet from the house to the property line, and a 30 foot set-back from house to front property line. El Camino Real is one of the main highways and arteries of commerce and travel in the state. It leads to and connects various cities and towns, and daily thousands of automobiles, buses, and heavily laden trucks with merchandise and produce pass the property in question. The highway forms the northeasterly boundary of the town of Atherton, and on the opposite side are unincorporated areas of San Mateo County, not subject to zoning or building restrictions of any kind. The area fronting on the opposite side of the highway has developed rapidly and solely into a commercial and industrial center, with the result that the Fee estate property is made unfit, unattractive, and useless as residential property. There are no residences or homes on the property fronting on the

Atherton side of the highway in the area where the Fee estate property is located, save and except one residence situate at a considerable distance from the highway on property northwesterly of the Fee estate property; and there is not now nor has there ever been any residential building activity in the area in which the Fee estate property is situated; and no practical use can be made of the land for residential purposes. The northeasterly side of the highway opposite the Fee property is more or less closely built up with various kinds of commercial and manufacturing buildings, including "hot dog" and "hamburger" establishments, fruit and vegetable stands, gasoline filling stations, restaurants, night clubs, cocktail lounges, retail and wholesale liquor stores, etc.

The complaint then goes on to allege that a sale of the Fee estate property is necessary to pay the debts of the estate and expenses of administration; that some of the heirs other than plaintiffs are scattered and reside outside of the State of California; that the property is mortgaged, and that plaintiffs are informed and believe that the mortgagee will not be content longer to let the mortgage run, and that if the estate is not distributed at this time foreclosure proceedings will be instituted; that because of the existence of the zoning ordinance and the building restrictions prescribed therein it is impracticable and impossible to sell or lease the property; that the existence of said ordinance and building restrictions "scares away purchasers and lessees, and depresses the sale or rental price of said real property, and interferes with, obstructs and hinders the power and right of plaintiff administrator to sell or lease said real property and no one will purchase or lease the same . . ." to the great and irreparable damage of all the plaintiffs herein; that for commercial purposes the property is of the value of over $40,000, but that as residential property its value does not exceed $7,500, and that even at such price no sale can be made unless the alleged illegal limitations and restrictions established by the ordinance, as to this property, are removed; that the same operate as a cloud on the title.

As said in *Akley* v. *Bassett*, 68 Cal.App. 270 [228 P. 1057], "The nature and object of the action to quiet title have been often defined in most comprehensive terms. The statement has been made that it embraces every sort of a claim whereby the plaintiff might be deprived of his property or *his title clouded or its value depreciated.* (*Withers* v. *Jacks,*

79 Cal. 297 [12 Am.St.Rep. 143, 21 P. 824]) ''; and a broader definition is given in the case of *Head* v. *Fordyce,* 17 Cal. 149, wherein the court said: ''The statute giving this right of action to the party in possession, does not confine the remedy to the case of an adverse claimant setting up a legal title, or even an equitable title; but the act intended to embrace every description of claim whereby the plaintiff might be deprived of the property, *or its title clouded, or its value depreciated, or whereby the plaintiff might be incommoded or damnified by the assertion of an outstanding title already held or to grow out of the adverse pretension.*'' (All italics ours.) Among the later cases wherein most of the above language has been quoted approvingly are *Andrews* v. *Russell,* 85 Cal.App. 149 [259 P. 113], and *Hughes* v. *Beekley,* 85 Cal.App. 313 [259 P. 337]. Applying those definitions to the foregoing alleged facts, it would seem clear that the action herein falls within the classification of an action to quiet title, first, because the alleged illegal building restrictions doubtless operate as a cloud on the title to the property by limiting its use and obstructing the sale or the leasing thereof; and secondly, because, according to the complaint, they have the direct effect of greatly depreciating the value of the property. If these same building restrictions were embodied in a deed or a contract, there would be no question that an action to quiet title would be the proper remedy to invoke to have determined the validity or invalidity thereof (*Strong* v. *Hancock,* 201 Cal. 530 [258 P. 60]; *Werner* v. *Graham,* 181 Cal. 174 [183 P. 945]; *Moe* v. *Gier,* 116 Cal.App. 403 [2 P.2d 852]; *Bernstein* v. *Minney,* 96 Cal.App. 597 [274 P. 614]; *Strong* v. *Shatto,* 45 Cal.App. 29 [187 P. 159]), and there would seem to be no good reason why the same remedy may not be invoked where such restrictions are imposed by a municipal ordinance.

Defendants take the position that the adverse claim or cloud must arise from a written instrument of some kind; but in the following cases it is held in effect that they may emanate from the provisions of a municipal ordinance. (*Los Angeles* v. *Los Angeles City Water Co.,* 177 U.S. 558, 580-581 [20 S.Ct. 736, 44 L.Ed. 886]; *Los Angeles City Water Co.* v. *City of Los Angeles,* 88 F. 720, 747-748; *Faulkner* v. *City of Keene,* 85 N.H. 147 [155 A. 195].) In the latter case the question presented was whether the claim made by the city, that the structure the plaintiffs were about to erect would violate a statute and a zoning ordinance, constituted an ad-

verse claim by the city to plaintiffs' title; and in answering defendant's contention that it had made no claim of right adverse to plaintiffs' title the court said, at page 199: "It appears that the position taken by the city as to the effect of the statute and ordinance has resulted in preventing the plaintiffs from making an advantageous disposal of the property. This result has come about because of doubt as to the plaintiff's right to the unrestricted use of their land. According to the defendant's claim, their title is materially limited. If in a technical sense it may be said that certain of their rights have been extinguished, rather than transferred to others, yet in another and practical sense it is true that they have been transferred. That part of the public affected by the use of the land are the gainers by the limitation of that use. *The rights thus created, and the limitations imposed, are of a like nature to negative easements, which unquestionably limit titles.*" (Italics ours.)

Defendants further contend that a zoning ordinance has its origin in the exercise of the police power, and that therefore the restrictions embodied therein are merely regulatory in character and do not impose any burdens on the land itself or the title thereto. The courts have held, however, that zoning is the deprivation, for the public good, of certain uses by owners of property to which their property might otherwise be put (*Gilgert* v. *Stockton Port District,* 7 Cal.2d 384 [60 P.2d 847]) and that if the use is so far restricted and the value depreciated that it can be said that the regulation goes too far, it will be deemed a taking of the property, in which event the ordinance becomes invalid and unconstitutional, because the taking is without due process of law. (*Arverne Bay Const. Co.* v. *Thatcher,* 278 N.Y. 222 [15 N.E. 2d 587, 117 A.L.R. 1110]; *Pennsylvania Coal Co.* v. *Mahon,* 260 U.S. 393 [43 S.Ct. 158, 67 L.Ed. 322].) Whether or not that is the case here is a question to be determined upon the trial of the action on the merits.

The trial court's ruling was apparently based on the theory that under the principle of quia timet the cloud sought to be removed must be an anticipated or apprehended danger or threat to the title, and that this is not such a case. But as said in the note found in 78 A.L.R. 34, which is supported by ample authority therein cited, "Although the courts speak of removing a cloud and preventing a cloud as though the two were distinct, an examination and comparison of the

cases suggests the conclusion that the use of the two terms does not represent a real difference, that the cases in which a cloud is 'removed' and those in which it is 'prevented' are not merely governed by the same principles, but are indistinguishable as to the form of relief and also as to the circumstances in which the relief is granted. . . . Whether the bill prays for the removal or prevention of a cloud, the decree is frequently both declaratory and injunctive. The distinction appears to be one neither of substance nor of form, but at most of emphasis; the court in one case referring to what has already occurred, and, in the other, to the next step in the sequence. In both cases, the relief granted is both preventive and remedial. The courts have said that the prevention and the removal of a cloud are but two aspects of the same thing, and in some of the cases have pointed out, what is believed to be implied in all the cases, that whenever a decree is granted for the prevention of a threatened cloud, there is a cloud already in existence.'' That is the situation here, the relief sought being both preventive and remedial.

██ Defendants urge the additional point that there is a misjoinder of parties, in that the remaining heirs are not made parties plaintiff or defendant, it being claimed in this behalf that the absent heirs are necessary and indispensable parties to a determination of the action. There is no merit in the point, for as will be noted, under section 573 of the Probate Code an administrator alone may sue to quiet title, and under section 581 the heirs themselves or jointly with the administrator may bring such an action, ''but they are not required so to do.'' Moreover section 369 of the Code of Civil Procedure provides that an administrator ''may sue without joining with him the persons for whose benefit the action is prosecuted.''

The judgment is reversed.

Peters, P. J., and Ward, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied October 21, 1943.