[Civ. No. 22678.   Second Dist., Div. Three.   June 19, 1958.]

JANE REED KISSINGER et al., Respondents, v. CITY OF LOS ANGELES et al., Appellants.

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, and Claude E. Hilker, Deputy City Attorney, for Appellants.

Ralph Swagler, Dunlap, Holmes, Ross & Woodson, Robert H. Dunlap and Kenneth A. Millard for Respondents.

NOURSE, J. pro tem.*—By their complaint in this action respondents sought a declaration of their rights under an ordinance passed by the Council of the City of Los Angeles which rezoned their property from zone R-3 (multiple dwellings) to zone R-1 (single family residential). By its judgment the trial court decreed that the ordinance was invalid and void for, among others, the following reasons:

"3. Said ordinance deprives plaintiffs of their property without due process of law, in violation of Section 13 of Article One of the Constitution of the State of California.

"4. Said ordinance, if sustained, would constitute confiscation of plaintiffs' property, in violation of Section 14 of Article I of the Constitution of the State of California.

"5. Said ordinance is a nullity because it was not enacted in the manner provided by law.

"6. Said ordinance is unreasonable, arbitrary and discriminatory and is an abuse of the legislative discretion vested in the defendant City Council."

---

*Assigned by Chairman of Judicial Council.

From this judgment the defendants appeal.

The facts in this matter are not in dispute. They are: The plaintiffs are the owners of 12 lots which are bounded on the south by Victory Boulevard, a heavily traveled main thoroughfare, in the city of Los Angeles, and on the north by an alley 20 feet in width. These lots constitute the entire frontage on Victory Boulevard between Gothic Avenue on the west and Valjean Avenue on the east.

From 1932 to 1946 plaintiffs' property and all property facing upon Victory was zoned R-3. In 1946 defendant city, by ordinance, adopted a comprehensive zoning plan and under this plan plaintiffs' property and the property facing upon Victory Boulevard for a considerable distance both east and west of plaintiffs' property was zoned R-3.

The plaintiff Kissinger acquired 42 acres which included the subject property in 1946 and in 1953 she subdivided a portion of that 42 acres which subdivision included the subject property and 12 lots facing upon Victory Boulevard situated between Gothic Avenue and Odessa Avenue (this constitutes the block immediately west of subject property). This subdivision was designated as Tract Number 17133 and the map thereof as recorded designated all of the property therein as zoned R-3.

After the recording of the subdivision map plaintiff Kissinger sold lots 1 to 13 and there was erected on each thereof a multiple dwelling two-stories in height. In 1954 the property facing Victory Boulevard and lying immediately east of the subject property was rezoned by the defendant city from R-3 to C-2 (commercial) and prior to February 1956 had been developed for commercial purposes including buildings designed and used for a super market and other retail businesses.

Tract Number 17133 is situated one mile south of the southerly end of the north to south runway of an airport owned by the city and maintained and operated by its Department of Airports. The property lying between the subject property and the airport is zoned R-1 with the exception that the lots facing on Van Owen Street are zoned R-3, that certain corner lots at the intersections of Van Owen and other main highways are zoned C-2 and a public school, the land occupied by which is zoned R-4.

This airport is used by the California National Guard for the operation of fighter-type aircraft, including jet planes, and also used by privately owned planes. The flight pattern for

aircraft approaching the airfield from the south encompasses the subject property and all property for more than a mile west of the subject property including a high school and also encompasses all of the property lying to the north of the subject property above mentioned. This flight pattern which was in existence in February of 1956 was established in 1932. Aircraft using this flight pattern are required to maintain an altitude of 4,000 feet until final approach to the air strip which must be completed at an altitude of not less than 500 feet. Under federal regulations aircraft must maintain a rate of descent not greater than 40 to 1. (C.A.A. TSO 18.) The airport has been used by the National Guard since prior to 1949 and between that date and the time of trial of the action there had been but a slight increase in the use of the field.

The subject property (except the most easterly 3 lots thereof) and the property in the block immediately to the west of it lie within the zone over which aircraft taking off from the airport in a southerly direction would pass. Such aircraft are required to maintain as high a rate of climb as is consistent with safety.

On February 28, 1956, plaintiffs applied for a variance so as to reduce the distance between proposed six-unit apartment buildings which they proposed to build on each of the 12 lots from 10 feet to 9 feet, 10 feet being the distance required by the ordinance for R-3 property. This was granted on March 8. On March 29 plaintiffs applied for building permits to construct six-unit apartments and garages on Lots 13, 14 and 15 of Tract Number 17133. The permits were granted on April 2 but on March 30, pursuant to oral clearances from the city's building department, actual construction of these apartments was commenced and the work continued through April 4. The work consisted of the clearing of the property, erection of the power poles, trenching and setting of forms for foundations, the prefabrication of plumbing and delivery of lumber onto the property. Plaintiffs expended in excess of $2,300 in doing this work.

On April 2, 1956, the city council was advised by one of its members of the proposed development by plaintiffs of the subject property and that the building permits, above referred to, had been issued; that the property was *"within the area that will shortly be acquired for airport purposes"* (italics ours) and thereupon a motion was adopted by which the Board of Airport Commissioners were requested to *"consider condemning this property in order that the same may be*

*acquired on a basis of its present value as vacant land"* (italics ours) and which also provided that the city attorney be notified of the council's action.

On April 4th the city council adopted a resolution which directed the city attorney to prepare an emergency ordinance changing the zoning of the subject property from R-3 to R-1. In the recitals which form the basis for the resolution it was stated that six-unit multiple dwellings had already been started on the subject property and that if the subject lots were classified in the R-1 zone fewer persons would be affected by the operations of the airport.

On April 5 the Department of Airports directed a letter to plaintiffs advising them that the Board of Airport Commissioners had formulated a plan for expansion of the San Fernando Valley Airport under which plan it was contemplated that a portion of the subject property would be acquired for the south approach to the airport and that, if a bond issue then on the ballot was approved by the voters, the city would purchase or condemn a portion of the subject property and demanded that plaintiffs desist from the construction of the proposed apartment buildings for which permits had been issued.

On April 4 or April 5 an emergency ordinance changing the zoning of the subject property from R-3 to R-1 was drafted by the city attorney and forwarded to the city planning commission.

On April 5 the city planning commission disapproved the ordinance upon the grounds that it would not be good policy to effect a change of zone without a public hearing and notification to the affected property owners. No hearing was had before the commission or the council and no notice of the proposed change of zone was given to the plaintiffs or to the public. The action of the commission was reported to the city council April 6 and the council on that date suspended its rules and the ordinance in question was adopted by the unanimous vote of the council.

A section of the ordinance recites, as the facts justifying the ordinance as an emergency one to take effect immediately upon its passage, that the subject property lies within the approach zone of the San Fernando Valley Airport; that the construction of a six-unit multiple dwelling had already started on a portion of the property; and "the construction of similar improvements [evidently contemplated] on the balance . . . would create an undue density of population at

this location'' and that, rezoning of the property would minimize the number of buildings which might otherwise be located thereon and result in fewer persons being affected by the operation of the airport.

Upon receiving the letter from the Department of Airports and on being notified of the passage of the ordinance plaintiffs ceased work and shortly thereafter commenced the present action.

The evidence shows without conflict and the court found that the subject property zoned for R-3 usage had a reasonable market value on the date of the adoption of the questioned ordinance of $114,000 but zoned for R-1 usage had a value of but $48,000.

Section 12.32 of the Municipal Code of the City of Los Angeles provides in substance that whenever public necessity, convenience, general welfare or good zoning practice justifies, the city council may by ordinance change the zones or regulations established under the comprehensive zoning plan; that such changes may be initiated by the city council, that any proposed change of zone shall be set for public hearing before the planning commission or an examiner thereof and that notice of such hearing shall be given by at least one publication 10 days before the date of hearing in a newspaper of general circulation and by mailing a postal card or letter notice to the property owners affected and whose property lies within 300 feet of the area proposed to be rezoned.

The trial court made findings in substantial accordance with the facts we have recited and concluded that the ordinance was a nullity because not enacted in the manner provided by law; that the ordinance was unreasonable, arbitrary and discriminatory and an abuse of the legislative discretion vested in the council and further concluded, among other things, that the ordinance if sustained would constitute a taking of the plaintiffs' property without the payment of just compensation contrary to the provisions of section 14, article I of the Constitution of this state.

Appellants do not nor could they well assert that the evidence was insufficient to uphold the findings of fact made by the trial court; but do attack the conclusions arrived at by that court from the facts found.

They assert that the wisdom of the ordinance is a matter of legislative determination and that if there is any reasonable justification of the action of the council in passing the ordinance the court may not substitute its judgment for that of

the council; that if the facts in any given case show that the reasonableness of the ordinance is fairly debatable the courts may not disturb the legislative determination and that the findings and conclusions of the trial court as to the reasonableness of an ordinance are not binding upon an appellate court.

These contentions are undoubtedly valid. (*Johnston* v. *City of Claremont*, 49 Cal.2d 826, 838-839 [323 P.2d 71]; *Lockard* v. *City of Los Angeles*, 33 Cal.2d 453, 461-463 [202 P.2d 38, 7 A.L.R.2d 990].) ■ This does not mean, however, that the courts may not inquire as to whether an ordinance which rezones property so as to restrict the uses which may be made of the property is unreasonable, oppressive or discriminatory for it is the duty of the courts to set aside an ordinance which under the facts is clearly unreasonable and oppressive or discriminatory. (*Lockard* v. *City of Los Angeles, supra; Wilkins* v. *City of San Bernardino*, 29 Cal.2d 332, 338 [175 P.2d 542]; *Reynolds* v. *Barrett*, 12 Cal.2d 244 [83 P.2d 29]; *Hurst* v. *City of Burlingame*, 207 Cal. 134, 143 [277 P. 308]; *Hagenburger* v. *City of Los Angeles*, 51 Cal. App.2d 161 [124 P.2d 345]; *Bank of America* v. *Town of Atherton*, 60 Cal.App.2d 268, 273 [140 P.2d 678]. And see cases cited at annotations, 51 A.L.R.2d pp. 311-314.)

■ The ordinance here in question constitutes what is known as "spot zoning" in that by rezoning it from zone R-3 to zone R-1 it restricts the use of plaintiffs' property while it leaves all similarly situated property subject to the provisions of the comprehensive zoning ordinance and in zone R-3. We are of the opinion that the present ordinance is arbitrary, discriminatory and that it in effect, is an attempt on the part of the city to use its police power to take plaintiffs' property without due process of law and without payment of compensation for that taking.

The evidence shows without conflict that there has been no change in the character of the subject property or the surrounding neighborhood since the adoption of the comprehensive zoning plan by which it was placed in zone R-3. It further shows that the city has not attempted to rezone any of the other properties which were zoned R-3 and which lie in the flight plan of the airport. The evidence further establishes that within that flight zone the city has permitted the erection of multiple dwellings upon land zoned R-3; that the block immediately west of the subject property has been developed within three years before the passage of the ordinance in question with multiple-unit dwellings of the same

class and character of those proposed to be erected by the plaintiffs upon their land; and that the block immediately east of plaintiffs' property has been rezoned to a higher classification, i.e. C-2 and developed to commercial uses. It is further established that the city has permitted property to be zoned R-4 and two public schools erected within the flight plan.

The sole reason assigned for the exercise of the police power in rezoning this property was to prevent an undue congestion of population in the area and thus expose fewer people to the hazards arising from the operation of the air field, the nearest boundary of which was one mile distant. This same hazard existed at the time the property was originally zoned R-3; at the time the schools were erected within the flight zone and at the time the property immediately to the west of the subject property was improved with two-story multiple dwellings and the property immediately to the east was rezoned C-2 and permits were given for the erection of the super market and retail stores thereon. The same hazard exists as to all the property zoned R-3 or R-4 or C-2 within the flight pattern and yet no property other than the plaintiffs' property has been rezoned. It is argued by appellants that a large proportion of the properties zoned R-3 or C-2 have been developed as R-1 properties and that their rezoning would not accomplish the purpose of preventing congestion in population. This does not answer the question of the arbitrariness of the ordinance or its discriminatory effect for it is conceded that the value of plaintiffs' property is cut in half and yet the property is no more subject to the hazards created by the operation of the air field than are any other properties within the flight area.

When we have heretofore said that there has been no change in the conditions affecting the subject property and other property within the flight zone we refer to the existing conditions but the evidence does show without conflict that the city at the time of the passage of the ordinance had in contemplation an extension of the airport runways for a distance of over 2,000 feet to the south and the establishment of a fan-shaped approach zone extending over most of the subject property and all of that portion of Tract Number 17133 which lies to the west of the subject property. The evidence establishes that to accomplish the enlargement of the airport and the creation of the approach zone above mentioned the city intends to condemn the subject property. The inference is clear that the

462

true purpose of the ordinance was to prevent the improvement of the subject property in order that it might be acquired at a lesser price for airport purposes.

While it is true that the motives which influence a legislative body in passing an ordinance which is within its power to pass may not be inquired into, where, as here, the facts are such as to show an attempt to exercise the police power in such a manner as to oppress or discriminate against an individual or individuals we are entitled to give weight to the evidence disclosing a purpose other than that declared by the ordinance in determining its validity. (*Dobbins* v. *City of Los Angeles*, 195 U.S. 223 [25 S.Ct. 18, 49 L.Ed. 169, 176-177] ; *Coulter* v. *Pool*, 187 Cal. 181, 185 [201 P. 120].) █ A zoning ordinance may not be used as a device to take property for public use without the payment of compensation. (*Dobbins* v. *City of Los Angeles, supra*; *State* ex rel. *Tingley* v. *Gurda*, 209 Wis. 63 [243 N.W. 317], *Grand Trunk Western R. Co.* v. *City of Detroit*, 326 Mich. 387 [40 N.W.2d 195, 199].)

That the purpose of the ordinance was to depress the value of the plaintiffs' property in order that it might be acquired for airport purposes at such depressed value is crystal clear from the evidence. The motion upon which this entire proceeding was initiated refers only to the advisability of condemning plaintiffs' property on the "basis of its present value as vacant land." It makes no mention whatsoever of the need to prevent an increase in the density of population. The letter addressed by the Department of Airports to the plaintiffs clearly states the intent to condemn the property and demands that the plaintiffs desist from improving the property until such time as it could be determined whether the city would have funds to proceed to acquire the property. The witness, City Planner Karl Ourston, of the defendant city, testified, when asked if any proceedings had been initiated for the rezoning of Lots 1-12 of Tract Number 17133, that the best plan for the property within the flight pattern was to take the property so that there would be no residences within the approach area and that there was an emergency as to both improved and vacant properties and that the solution of the emergency as to vacant property was to rezone it and as to the improved property to acquire the land and take the buildings off.

In short the ordinance arbitrarily rezoned the plaintiffs' property to a use to which it could not economically be put, lying as it does between multiple-dwelling development and

commercial development and discriminates against the plaintiffs by preventing the use of their property for the use for which it is best fitted, while permitting all other property similarly situated and zoned to be used as R-3 property.

As applied to Lots 13, 14 and 15 of the subject property the ordinance is clearly void for another reason. The city issued building permits for the construction of multiple dwellings on each of these lots and plaintiffs expended the sum of $2,300 in work done under these permits. Plaintiffs thus had a vested right to construct the multiple dwellings for which the permits had been issued, and the ordinance if enforced as to these lots would result in the taking of plaintiffs' property without compensation and without due process of law. (*County of San Diego* v. *McClurken,* 37 Cal.2d 683, 690-691 [234 P.2d 972]; *Wheeler* v. *Gregg,* 90 Cal.App.2d 348, 365 [203 P.2d 37]; *Dobbins* v. *City of Los Angeles, supra,* 195 U.S. 223 [25 S.Ct. 18, 49 L.Ed. 169, 176]; *Trans-Oceanic Oil Corp.* v. *City of Santa Barbara,* 85 Cal.App.2d 776 [194 P.2d 148] and cases there cited.)

Appellants admit that if the provisions of section 12.32 of the municipal code (hereinbefore mentioned) are applicable to proceedings for a change in zone initiated by the council that the council was without power under the charter to pass the ordinance in question here. They assert, however, that by section 12.32 the council attempted to limit the power to pass zoning ordinances invested in it by the charter and that it could not validly so do.

In support of this contention the appellants rely upon *Thompson* v. *Board of Trustees of City of Alameda,* 144 Cal. 281 [77 P. 951] and *Briare* v. *Matthews,* 202 Cal. 1 [258 P. 939]. These cases are not controlling here. In each of them the statute or charter involved had imposed the absolute right and unconditional duty upon the council to legislate as to the matters involved in the cited cases and in each case the Supreme Court held that the council could not by ordinance place any limitation upon its duties and powers.

In the present case, however, the council's powers to pass ordinances rezoning property are not unconditional, for by section 97 of the city charter (Stats. 1941, p. 3499) it is prohibited from adopting an ordinance changing, amending or altering any zone until the proposed ordinance has been first submitted to the city planning commission and it is made the duty of the city planning commission, within 30 days after receiving a proposed ordinance, to cause an investigation to be

made by the director of city planning and to report the result of such investigation to the council. If the planning commission recommends against the adoption of the ordinance the council may only pass it by a two-thirds vote of the whole council. Should the planning commission recommend approval or fail to make any recommendation the council may adopt such ordinance by a majority vote. By section 96½ of the charter (Stats. 1941, p. 3499) it is made the duty of the planning commission to hold all public hearings which may be required "by law" for the adoption, extension or modification of the zoning plan. The provisions of section 96½ must be construed as requiring the planning commission to hold public hearings where required to do so by ordinance. City planning is a municipal affair and the planning commission is not subject to the general laws of the state governing unchartered municipalities and therefore the only public hearings that could be required of it by law are those required by the ordinance. (*Pimental* v. *City of San Francisco*, 21 Cal. 351.)

As we construe sections 96½ and 97 of the charter they require that where a change in zone is initiated by the council it must submit the proposed ordinance to the planning commission and the planning commission must, within the time set forth in the charter, hold a public hearing, upon notice, in accordance with the provisions of section 12.32 of the municipal code. Any other interpretation would deprive the provisions of section 97 of the charter, making a condition to the council's right to pass a zoning ordinance the submission of the ordinance to the planning commission, of substance or any real effect; and would give the council full power to pass the ordinance by merely going through the form of forwarding the ordinance to the planning commission with directions that it act forthwith without any opportunity for investigation by the commission or hearings before it.

Certainly sound common sense and wise public policy would require an opportunity for property owners to be heard before ordinances which substantially affect their property rights are adopted and we must assume that the framers of the charter had such purpose in view in limiting, by section 97, the council's right to act. (23 Cal.Jur. § 139, p. 766; *San Joaquin etc. Irr. Co.* v. *Stevinson*, 164 Cal. 221, 229 [128 P. 924].)[1]

---

[1]This is the policy adopted and declared by the Legislature with the provisions of sections 65500-65509, 65803, 65804, Government Code.

It would be absurd to construe these charter provisions as appellants would have us construe them, i.e. as requiring the council to make but a token submission of the ordinance to the planning commission without giving that commission the power or opportunity to perform the duties cast upon it by the charter. Such a construction is not to be placed upon the charter unless required by the plain provisions thereof. That the provisions of the charter do not require such an absurd result is too clear for argument. (*San Joaquin etc. Irr. Co.* v. *Stevinson, supra*; *Merced Security Sav. Bank* v. *Canaccia,* 103 Cal. 641, 645 [37 P. 648].) The report which the planning commission is required to make to the council is a report based upon an investigation and a hearing and it is to be assumed that the council will give due consideration to the facts submitted to it by the planning commission in its report before adopting an ordinance against the recommendation of the commission.

We therefore cannot agree with appellants' contention that the respondents cannot complain of the lack of a hearing before the commission because the commission recommended against the adoption of the ordinance. The commission's recommendation was based upon the fact that no opportunity was given it to hold a public hearing. If there had been a hearing the recommendation would have been upon the merits.

Under the construction we have placed upon the charter provisions, section 12.32 is not void as an attempted limitation upon the power granted by the charter to the city council but is valid merely as an implementation of the charter's provisions, and the council was bound by the provision of the ordinance.

In the present case as there was but a token compliance with the provisions of the charter and no compliance with the provisions of the charter as implemented by the ordinance the council was without power to adopt the ordinance.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 13, 1958.