[Civ. No. 29449.   Second Dist., Div. Two.   June 23, 1966.]

DONALD SMITH et al., Plaintiffs and Appellants, v. COUNTY OF SANTA BARBARA et al., Defendants and Respondents.

Glass & Allen and Charles Glass, Jr., for Plaintiffs and Appellants.

Robert K. Cutler, County Counsel, Dana D. Smith, Assistant County Counsel, and Francis Sarguis, Deputy County Counsel, for Defendants and Respondents.

ROTH, P. J.—Appellants Donald Smith and Wayne Bates appeal from a judgment dismissing their suit for inverse condemnation (Cal. Const., art. I, § 14) against respondent County of Santa Barbara (County) and City of Santa Maria. The judgment was entered after the court sustained respondent's demurrer to appellants' second amended complaint without leave to amend. There does not appear to be any ruling or judgment in favor of the City of Santa Maria, although it is a party to the second amended complaint. It is not a party to this appeal.[1]

Appellants allege that: they owned a parcel of realty consisting of approximately 87 acres within the County of Santa Barbara; in January 1960, with the approval of the county they filed a subdivision map for family residences covering one portion of the parcel; thereafter they prepared another such map for a second portion of the property which was again approved by the county; the Committee of the Santa Maria Public Airport acted as agent for the two defendants, indicated that it wished to negotiate an exchange of appellants' land for land owned by the airport committee because (1) the committee anticipated acquisition of appellants' land for expansion of the airport and (2) to avoid future damage claims against the airport by future residents who might inhabit the projected subdivision; the committee

[1]The County of Santa Barbara and City of Santa Maria, when referred to jointly, are called ''defendants.''

represented that it would try to obtain a removal of U.S. government interests in the airport land to effectuate the exchange for appellants' land, but that the committee never contacted the U.S. government; appellants refrained from filing their second subdivision map believing that the exchange would be effected, but when negotiations broke down, it was too late to file the second map; appellants' requests to the county for an extension of time in which to file the second map were denied for the stated reason that the county was apprehensive of future damage claims by future residents on the property and the possibility of future expansion of the airport; the highest and best use of the land was for residential property and the actions of the defendants rendered appellants property worthless for such use; the action of the defendants was arbitrary, discriminatory, unreasonable and oppressive; and that from 1959 to date the county has received and granted approximately 30 requests for extension of time for filing subdivision maps, appellants' request being the only denial.

Appellants further allege that on or about April 1, 1963, the county "rezoned all of [appellants'] property, and the surrounding area to a new and different zoning, to wit: Design Industrial. . . . That the reasons given by [the county] for changing the zoning of [appellants' land and the surrounding area were] the same as those given for refusing the extension of time to record said Final Map." County's action rendered appellants' property worthless for its highest and best use; and that as a consequence appellants' property was taken or damaged without just compensation in violation of article I, section 14 of the California Constitution. Appellants pray for one million dollars in damages.

On appeal, appellants concentrate on the validity of the zoning change effected by the county on April 1, 1963.

It should be noted at the outset that appellants fail to allege that the property was rendered valueless by the rezoning. The allegation is that the denial of the extension of time for filing the subdivision map "has rendered said property worthless for development to its highest and best use as aforesaid," and that the rezoning of the property "rendered plaintiffs' property virtually worthless *as set forth herein.*" (Italics added.) As we have noted, the phrase "highest and best use" refers to residential use. Nothing in the allegation indicates that the property is not valuable as "Design Industrial" property, as the new zoning category is called.

■ Assuming, as we must, the truth of the allegations, the practical question at bench is whether county could validly enact a zoning ordinance which depreciated the value of appellants' property.

Appellants reach that question by conceding the accepted principle that if the facts upon which a zoning ordinance is predicated are fairly debatable, courts will not disturb a legislative determination. They contend, however, that such legislative determination may not be unreasonable, oppressive or discriminatory and that the admitted facts at bench show that the zoning ordinance here involved was all three. We do not agree.

Appellants rely on *Kissinger* v. *City of Los Angeles,* 161 Cal.App.2d 454 [327 P.2d 10]. In that case, the court struck down a zoning ordinance restricting the use of plaintiff's land situated near an airport. The ordinance constituted what is known as ''spot zoning.'' Kissinger's land was the only property affected. The property surrounding Kissinger's land was no different in character or use. Shortly before the zoning ordinance passed, a motion was passed by the city council requesting the Board of Airport Commissioners to consider condemning Kissinger's property for airport purposes ''on a basis of its present value as vacant land,'' although the evidence revealed that Kissinger had already commenced building apartments on the property in conformity with the then existing zoning restrictions. The city gave many public welfare reasons for the spot zoning ordinance, but these reasons were undermined by the fact that they were as applicable to properties surrounding Kissinger's land. Kissinger's property was the only property condemned for airport use.

The court held that the wisdom of an ordinance is not subject to judicial scrutiny, and that any reasonable justification will sustain it; (*Johnston* v. *City of Claremont,* 49 Cal.2d 826, 838-839 [323 P.2d 71]; *Lockard* v. *City of Los Angeles,* 33 Cal.2d 453, 461-463 [202 P.2d 38, 7 A.L.R.2d 990]), but that a zoning ordinance may be struck down if it is unreasonable, oppressive or discriminatory. It said a zoning ordinance may not be used as a device to take property for public use without the payment of compensation. (*Dobbins* v. *City of Los Angeles,* 195 U.S. 223 [25 S.Ct. 18, 49 L.Ed. 169]; *State* ex rel. *Tingley* v. *Gurda,* 209 Wis. 63 [243 N.W. 317]; *Grand Trunk Western R.R. Co.* v. *City of Detroit,* 326 Mich. 387 [40 N.W.2d 195]; *Kissinger* v. *City of Los Angeles, supra,* at pp. 460-462.)

In *Kissinger*, however, a most obvious mainstay of the court's decision was its finding that the ordinance which was subjected to attack had not even been passed in the lawfully prescribed manner, and that therefore it was devoid of any force and effect. In a word, the Los Angeles City Council had abused the legislative discretion vested in it, by entirely ignoring certain procedural limitations imposed upon it by the city charter (*Kissinger* v. *City of Los Angeles*, pp. 463-465.)

There are no procedural defects in the enactment of the ordinance in the case at bench, at least none are called to our attention.

Further, in the case at bench, appellants do not allege that the county rezoned their property solely for the purpose of depressing its value prior to condemnation; they allege only that this was something the defendants "took into consideration." Appellants, to the contrary, allege directly that the primary reason the county denied their request for an extension of time to file a second map and for rezoning the property as "Design Industrial" was to prevent future damage claims by prospective residents of appellants' property, if it were zoned as residential. The expressed reason given by the county alleged by appellants is implicit with the admission that private citizens residing near the airport would be so harassed and annoyed by the operation of the airport that they would suffer damages. Such a reason, in our opinion, justifies the passage of the zoning ordinance.

In *Wilkins* v. *City of San Bernardino*, 29 Cal.2d 332, the court said at pages 338-339 [175 P.2d 542] : "[T]he mere fact that some hardship is experienced is not material, since 'Every exercise of the police power is apt to affect adversely the property interest of somebody.' [Citation.] It is implicit in the theory of police power that an individual cannot complain of incidental injury, if the power is exercised for proper purposes of public health, safety, morals and general welfare, and if there is no arbitrary and unreasonable application in the particular case.

"Where it is claimed that the ordinance is unreasonable as applied to plaintiff's property, . . . it is incumbent on plaintiff to produce sufficient evidence from which the court can make such findings as to the physical facts involved as were justified in concluding, *as a matter of law* [italics added], that the ordinance is unreasonable and invalid. It is not sufficient for him to show that it will be more profitable to him to make other use of his property, or that such other use will not cause

injury to the public, but he must show an abuse of discretion on the part of the zoning authorities and that there has been an unreasonable and unwarranted exercise of the police power. [Citation.] Every intendment is in favor of the validity of the exercise of police power, and, even though a court might differ from the determination of the legislative body, if there is a reasonable basis for the belief that the establishment of a strictly residential district has substantial relation to the public health, safety, morals or general welfare, the zoning measure will be deemed to be within the purview of the police power [citations]."

We note also that this case differs from the *Kissinger* decision in that there is no allegation that the zoning affected only those lands which were to be purchased for public use. There are no allegations of spot-zoning. Indeed, the allegation is that the county rezoned all of appellants' property "and the surrounding area." Nor do appellants allege, as was the fact in *Kissinger,* that the zoning was restricted to properties to be condemned. In the absence of such allegations, we must presume that the purposes underlying the passage of the ordinance were valid and constitutional. (*Longridge Estates* v. *City of Los Angeles,* 183 Cal.App.2d 533, 539 [6 Cal.Rptr. 900].)

Appellants also rely on *Bank of America* v. *Town of Atherton,* 60 Cal.App.2d 268 [140 P.2d 678]. The court in that case stated at page 273:

"The courts have held . . . that zoning is the deprivation, for the public good, of certain uses by owners of property to which their property might otherwise be put (*Gilbert* v. *Stockton Port Dist.,* 7 Cal.2d 384 [60 P.2d 847]) and that if the use is so far restricted and the value depreciated that it can be said that the regulation goes too far, it will be deemed a taking of the property, in which event the ordinance becomes invalid and unconstitutional, because the taking is without due process of law."

*Atherton,* too, was decided on demurrer on the procedural point that the administrator did not have capacity to sue. The cause was reversed on the ground that the administrator could sue and in discussing the allegations of the complaint which it, of course, accepted as true, the court uses the language excerpted.

In the case at bench, there are no comparable allegations. Here, the allegation is that the land is worthless for residential use. Industrial use may or may not make the land worth

more. The exercise of police power is not unreasonable, oppressive or discriminatory because it changes the use to which land can be put. Assuming *arguendo* depreciation in value, such a result does not make the ordinance unreasonable, oppressive and discriminatory. Valid exercise of the police power frequently has such a result. (*Wilkins* v. *City of San Bernardino,* 29 Cal.2d 332, 338-339 [175 P.2d 542]; *Zahn* v. *Board of Public Works,* 195 Cal. 497, 512 [234 P. 388]; *McCarthy* v. *City of Manhattan Beach,* 41 Cal.2d 879, 890 [264 P.2d 932].)

Appellants urge that county abused its discretion in refusing to permit filing of the second map. They acknowledge, however, that Business and Professions Code, section 11554, relating to the extension of time within which to file final subdivision maps grants the county broad discretion in this regard.

Since we have upheld the rezoning ordinance, we are unable to see how appellants were in any way harmed by the refusal of the county to accept their second map proposing a residential subdivision of property which had been zoned exclusively for industry.

The judgment is affirmed.

Herndon, J., and Fleming, J., concurred.

A petition for a rehearing was denied July 15, 1966.