**1.77 ACRES OF LAND, MORE OR LESS, 3.71 Acres of Land, More or Less; Situate IN BRANDYWINE HUNDRED, NEW CASTLE COUNTY and State of Delaware, Robert A. and Laura L. Cunningham, his wife, and Unknown Owners, Defendants Below, Appellants,**

v.

**The STATE of Delaware upon the relation of the STATE HIGHWAY DEPARTMENT, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Nov. 3, 1969.

William D. Bailey, Jr., of Bayard, Brill, Russell & Handelman, Wilmington, for defendants below, appellants.

Audrey B. Lank, of Theisen & Lank, Wilmington, for plaintiff below, appellee.

WOLCOTT, Chief Justice, CAREY, Justice, and MARVEL, Vice-Chancellor, sitting.

CAREY, Justice.

This is an appeal from the confirmation by Superior Court of an award in a condemnation case. The property, which is located in Brandywine Hundred north of Wilmington, was taken by the State Highway Department, appellee (Dept.), for the construction of I–495, an interstate highway. See 241 A.2d 513. It was owned by Robert A. Cunningham and his wife, appellants (owners). The date of the taking was December 12, 1966. The total quantity taken was about five and one-half acres out of a tract containing about fifteen and one-half acres.

The owners contend that the Court below erred in admitting into evidence during the trial certain testimony consisting

of: (1) evidence of value based upon a use presently prohibited by the County Zoning Code; (2) evidence of the purchase price paid by the owners; (3) evidence brought out during cross-examination of owners' expert witness concerning a prior appraisal of other land by him; (4) evidence of the number of appraisers employed by the owners.

The property adjoins the west side of Governor Printz Boulevard. For a depth of four hundred feet, it is zoned M–1 (light industrial), in which residences are not permitted. The remainder of the property is zoned R–1–C (residential-commercial). There are no buildings on the property. At the trial, on the issue of value, Mr. Tingle, an expert, and Mr. Cunningham personally testified on behalf of the owners. Both of these witnesses based their estimates upon light industrial and/or heavy commercial use, which they considered to be the highest and best use for the land. Two experts, Mr. Montgomery and Mr. Fortner, testified for the Dept. They were of the opinion that the highest and best use is R–4 (multi-family residential). Both of these experts expressed the belief that rezoning to R–4 is probable, giving their reasons for that belief. Mr. Fortner was so persuaded partly by the fact that the Regional Planning Commission had, in its Revised Comprehensive Development Recommendations, published in August, 1966, showed the property for multi-family residential use, which would permit garden apartments. Mr. Montgomery based his opinion upon several factors, such as the great increase in population in Brandywine Hundred, the proximity of schools and parks, the rising demand for apartments, easy access to the City of Wilmington, and absence of a buffer zone between the M–1 and R–1–C portions of the property. He also pointed to the fact that this land had remained undeveloped for a number of years under its M–1 classification. The award made was very close to the figures given by the Dept.'s appraisers; it was considerably less than those of the owners' witnesses.

I

The owners' objection to the Dept.'s evidence of value based upon probability of rezoning is predicated upon two contentions: (1) there is no justification for the conclusion that the property would probably be rezoned or that a rezoning would enhance its value; (2) rezoning of the property would in fact reduce its value.

We held in 0.40 Acres v. State ex rel. State Highway Dept., Del., 198 A.2d 7, that "* * * where land is not available for a particular use because of a zoning ordinance, but there is a reasonable probability that the prohibition or restriction will be modified or removed in the near future, then the effect of such probability upon the value of the property may be taken into consideration in arriving at market value." In that case, we also held that a qualified real estate appraiser is competent to express an opinion concerning the probability of rezoning.

The owners' principal argument against the acceptance of the Dept.'s evidence has to do with one reason given by Mr. Montgomery for his opinion, namely, the fact that the property had been zoned M–1 ever since the original county zoning in 1954, yet it has remained vacant ever since.* Mr. Cunningham explained this fact by stating that, for the past several years, it was widely known that the Dept. was planning the construction of I–495 through the area, and that part of this property would undoubtedly be needed for it. He stated that he attempted to ascertain precisely what part would be taken, but that the Dept. could not give him that information until 1966, when the plans were finally approved. He indicated that he had a number of inquiries from persons who wanted to use it for industrial purposes, but who

* Apparently Mr. Fortner did not rely upon this fact; the appendix does not disclose any reference to it by him.

lost interest when told of the proposed taking and his inability to determine precisely what would be taken. He contends, therefore, that the Dept., by making it impossible to sell any of the lands during that period, and by using the failure to develop them as a basis for rezoning, has in effect rezoned them to a cheaper classification in order to acquire the property at a lower price. One difficulty with this argument is that the Dept.'s appraisers did not agree with the suggestion that the M–1 classification is the most valuable use. In fact, Mr. Fortner could not understand why the property was ever zoned M–1, because other adjoining properties to the north and south were placed in other classifications, causing him to consider that the original zoning here was almost "spot zoning."

In this connection, owners rely upon several cases, to wit: Robyns v. City of Dearborn, 341 Mich. 495, 67 N.W.2d 718; State ex rel. Tingley v. Gurda, 209 Wis. 63, 243 N.W. 317; Kissinger v. City of Los Angeles, 161 Cal.App.2d 454, 327 P.2d 10; Board of Commissioners of State Institutions v. Tallahassee Bank & Trust Co., Fla.App., 108 So.2d 74; Robertson v. City of Salem, D.C., 191 F.Supp. 604. All of these authorities were instances in which a public body was about to condemn property, or was contemplating doing so, and a zoning agency placed that property in a classification which depressed its value. The zoning was held to be unreasonable because its apparent purpose was to enable the condemnor to acquire it at the reduced value. A typical statement is found in the *Robyns* case, *supra*, as follows:

"Defendant may not, through the device of zoning for a use to which property is not suited, depress its value preliminary to condemning it for public purpose."

In attempting to bring the present case within the foregoing rule, owners necessarily rely upon the testimony presented on their behalf that the highest and best use is industrial or commercial. This argument falls because the Commission's decision obviously means that it did not accept that testimony, but found that its most valuable use is R–1–C; the "rezoning" evidence was not introduced to lower its value, but to increase it. This finding renders the rule of the cited cases inapplicable. The matter was one for the triers of fact.

## II

Objection was made at the trial, and renewed here, to a question put to Mr. Cunningham in cross-examination as to how much he had paid for the land in 1952. Such evidence was considered by this Court in State v. 0.0673 Acres of Land, Del., 224 A.2d 598. Its admissibility was there held to be a matter largely within the discretion of the trial Judge. It was there offered by the owner, whereas it was here brought out by the condemnor, a fact which makes no difference, in our opinion. We do not consider its admission in this case to constitute an abuse of discretion. The interval between the purchase and the date of taking was not so great as to render the testimony inadmissible as a matter of law. The owners were, of course, free to bring out any proper evidence to explain the wide difference between that purchase price and the estimate made by their witnesses.

## III

Objection was made below to the questioning in cross-examination of Mr. Tingle concerning his appraisal of another property which apparently was the subject of a prior condemnation proceeding. The objection was overruled. The questions which followed brought out the fact that the other property was not comparable to the present one. Assuming the evidence was inadmissible, we are unable to see how any prejudice was caused by it. Commonwealth v. Evans, Ky., 361 S.W.2d 766. We are of the opinion that its admission did not constitute reversible error in this case.

## IV

■ Finally, the owners charge error in permitting the Dept.'s counsel, over objection, to ask Mr. Tingle how many appraisers the owners had employed. The witness did not know. The error, if any, was harmless. The same question was later asked of Mr. Cunningham during his *direct* examination. The owners are in no position to complain about this ruling at the present time.

Finding no reversible error, we will affirm the judgment below.