[L. A. No. 24725. In Bank. Feb. 3, 1959.]

NICK VANGEL et al., Respondents, v. CHARLES VANGEL, Appellant.

Pacht, Ross, Warne & Bernhard, Isaac Pacht and Harvey M. Grossman for Appellant.

Harold M. Heimbaugh and George W. Rochester for Respondents.

CARTER, J.—Defendant, Charles Vangel, appeals from a judgment entered in an action instituted in April, 1946, by plaintiffs, Nick and Ernest Vangel, for dissolution of a partnership. The case has now been tried four times and this appeal is from the judgment entered after the fourth trial. (*Vangel* v. *Vangel*, 116 Cal.App.2d 615 [254 P.2d 919]; *Vangel* v. *Vangel*, 45 Cal.2d 804 [291 P.2d 25, 55 A.L.R.2d 1385].)

In May, 1944, Nick, Ernest and Charles Vangel, brothers, entered into an agreement for the purchase and operation of a 360-acre citrus ranch. The agreement provided that title was to be taken in the individual names of the three brothers, each of whom was to contribute his pro rata share of the purchase price and each to own a one-third interest in the ranch. The purchase of the ranch was consummated for $340,000, with a down payment of $120,000. Charles was unable to pay his full share of the down payment and borrowed $25,000 from Nick and Ernest to make up his share of $40,000.

After operations had commenced a dispute arose among the brothers which culminated in an action by Nick and Ernest to dissolve the partnership. Inasmuch as our decision here must necessarily turn upon a construction of the opinion rendered by the District Court of Appeal in *Vangel* v. *Vangel*, 116 Cal.App.2d 615 [254 P.2d 919], and by this court on December 23, 1955, we will set forth in some detail the pertinent portions thereof. Unless otherwise noted, the emphasis is here added. In *Vangel* v. *Vangel*, 45 Cal.2d 804, 806, 807, 808, 809, 810 [291 P.2d 25, 55 A.L.R.2d 1385], we held: ''By the prior judgment, a dissolution was decreed effective as of June 15, 1950. The court found that Charles wrongfully caused the dissolution and concluded that Nick and Ernest were privileged to purchase his interest. The value of the ranch was fixed at $235,000, and a finding was made as to the value of Charles' interest in the partnership. According to another finding, he was entitled to participate in profits accruing between the date of dissolution and January 1, 1951.

''Upon the prior appeal [*Vangel* v. *Vangel*, 116 Cal.App. 2d 615 (254 P.2d 919)], findings as to the value of the ranch property and Charles' fault in causing the dissolution were approved. *It was held that the trial judge properly allowed the plaintiffs to purchase Charles' interest, but that he erred in failing to include certain items in his valuation of it.* Furthermore, said the District Court of Appeal, *the right of Charles to participate in profits accumulated by joint use of*

*the partnership assets should not have been terminated as of January 1, 1951. That period, it was determined, should extend so as to include the proceeds from fruit substantially matured and soon ready for marketing,* the final date to be left to the sound judgment of the chancellor. As to those matters, the judgment was reversed with directions for an accounting.

"The amounts of profits from the operation of the ranch after dissolution of the partnership and of set-offs, claims and advances, as determined upon the retrial, are not now disputed. The value of Charles' interest in the partnership at the time of dissolution based upon those amounts, *was found to be 23.96 per cent* of the partnership net worth. *The court also declared that Charles is entitled to that percentage of the profits from the operation of the ranch accruing between the date of dissolution and the winding up of the partnership affairs.* Another finding is that 'whatever services defendant may have rendered toward the conduct of the partnership affairs, from the date of the dissolution of the partnership . . . was voluntary on his part and against the wishes and directions of the plaintiffs.'

"The judgment gives Nick and Ernest, *inter alia,* the right to purchase Charles' interest in the partnership for its value as determined at the retrial, *plus interest on that amount from September 8, 1953.* Charles is allowed 23.96 per cent of the profits accruing prior to that date and the same percentage of certain proceeds from sales of crops. *He is denied any wages for services performed after the dissolution of the partnership* and must pay 23.96 per cent of the audit.

"Charles contends that the trial judge erred in his computations of the values at the time of the dissolution, of the respective partnership interests and of the partners' shares of the profits accruing between dissolution and the winding up of the partnership affairs. He also challenges the finding that his post-dissolution services were 'voluntary' and 'against the wishes and directions of the plaintiffs' as being without support in the evidence. Finally, he contends that he should not have been taxed any of the costs of conducting the audit upon the retrial.

"With regard to the value of the partnership interests, Charles argues that the trial judge erred in including in the partners' capital accounts items which properly are personal obligations of the partners *inter sese.* He objects particularly

to the inclusion of an item of $25,000, advanced to him by the other partners upon the purchase of the ranch, and another one of $42,000, which his brothers assertedly withdrew improperly from partnership funds.

"Upon the former appeal, however, it was held that these items were, respectively, an obligation owing to the partnership and a distribution of profits. By including those items in his computations of the values of the partners' interests in the partnership, the trial judge followed the mandate of the District Court of Appeal: 'In ascertaining such interest not only is the value of the ranch to be considered as of that date [June 15, 1950] as well as other capital assets, liabilities and expenses, but also the claims which the partnership had against the brothers *and their set-offs among themselves* should have been computed as of June 15, 1950, with interest to that time.' (Emphasis added, 116 Cal.App.2d 629-630.) The court further said 'in determining the respective financial interests in the partnership business as of that date consideration must be given to the $25,000 which plaintiffs advanced for defendant, *and to the $42,000 which plaintiffs improperly withheld* and distributed, together with interest on said sums to date of dissolution. All other assets and liabilities of the partnership, together with any claims of the parties *inter se,* must be included in the ascertainment of the respective interests of the plaintiffs and the defendant.'

"In attacking the portion of the judgment limiting him to 23.96 per cent of the post-dissolution profits, Charles has presented several theories as justifying a larger amount. *It is unnecessary to consider all of them, however, because the computation of his share was made upon an erroneous basis.*

"Upon the former appeal it was held that the trial judge was correct in concluding that the partnership had been dissolved by reason of Charles' breach of the partnership agreement and that the remaining partners had exercised their privilege of continuing the partnership business. (Corp. Code, § 15038, subd. (2b).) In that situation, Charles was entitled to have computed the value of his interest in the partnership, exclusive of his share of the good will of the business, and less any damages caused to his copartners. (Corp. Code, § 15038, subd. (2c II).) For the use of his partnership assets in the continuing business, pending a settlement of the accounts, he was entitled to receive 'as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest, or, at his option . . . in lieu of interest, the

profits *attributable to the use of his right in the property* of the dissolved partnership.' (Emphasis added; Corp. Code, § 15042.) Said the District Court of Appeal, '*From the position defendant has taken on this appeal it is fair to say that he has elected to take profits rather than interest on the value of his share of the partnership.*' (116 Cal.App.2d 629.)

"The record presents the rather unusual situation of a partner, expelled from the partnership for cause and by judicial decree, continuing to participate with his former partners in the operation and management of the business. Charles contends that he is entitled to receive compensation for services so performed. In reply, his brothers rely upon the finding that his post-dissolution services were voluntary and against their wishes. However, the evidence does not support that finding. It appears that Charles continued to participate in the business in substantially the same manner as before the action for dissolution. There is no evidence of any protest by his brothers. On the contrary, they appear to have acquiesced fully in his continuing services.

"Section 15042 of the Corporations Code fixes the right of one retired from a partnership for cause, or the personal representative of a deceased partner, to recover compensation for the use of his assets in the continuing business pending an accounting. In such case, he is entitled to 'the profits attributable to the use of his right in the property.' As a practical matter, his share of the profits usually is computed on the basis of the ratio that his share of the partnership assets bears to the whole of them. [Citations.] However, that division may not be equitable when the contribution to profits from capital is relatively minor in comparison to the contribution from the skills or services of one conducting the business. In such a case, the managing partner may be entitled to a greater share of the profits. [Citations.] Although such a method of dividing profits is usually spoken of in terms of providing extra compensation for the managing ex-partner, in reality it merely reflects the statutory requirement that the retired or deceased partner be allowed the profits attributable to his right in the assets used in the business.

"No California case considers the right to compensation for services in a continuing business of one whose fault has caused the dissolution of the partnership. The authorities in other jurisdiction are in conflict. [Citations.] Those which deny recovery generally proceed upon a theory similar to the unclean hands principle; most of the decisions which allow

recovery are based upon the principle that one who seeks equity must do equity.

"*In the present case the balance of the equities favors the allowance of compensation based upon services rendered. The type of operation here shown is one which involves a considerable amount of service and skill in the cultivation and harvesting of a citrus crop. Furthermore, it would be inequitable to deny Charles compensation for his services when his brothers acquiesced in them.*

"The respondents [plaintiffs] take the position, however, that the requirement that profits be apportioned according to the values of the partnership interests without compensation to Charles for his post-dissolution services is the law of the case as established in *Vangel* v. *Vangel, supra.* It is unnecessary to pass upon this contention. 'The doctrine of the law of the case is recognized as a harsh one . . . and the modern view is that it should not be adhered to when the application of it results in a manifestly unjust decision.' (*England* v. *Hospital of Good Samaritan,* 14 Cal.2d 791, 795 [97 P.2d 813].) Even if the decision upon the former appeal be construed as limiting the apportionment of profits in the manner suggested, it would be unjust to do so, and the decision should not be followed to that extent.

"*The judgment, insofar as it determines the value of the partnership interests and the total amount of post-dissolution profits to be distributed among the ex-partners, is based upon findings which are supported by substantial evidence. However, those profits are divided solely upon the basis of the relative values of the partners' interests in the partnership property. The amount of profits attributable to the use of Charles' share of the assests [sic] and also those allocable to his services in the continuing business should have been considered in the apportionment.*

"No error is shown in the award of costs. A proceeding to dissolve and liquidate a partnership is controlled by equitable principles [citations] and the trial judge has a broad discretion in fixing costs [citations].

"*The judgment is reversed with directions to the trial court to determine, in accordance with this opinion, the respective share of the profits to which each partner is entitled.* In all other respects the judgment is affirmed. The costs upon this appeal shall be divided equally between the appellant and the respondents.''

SUMMARY OF DIRECTIONS:

WE HELD (in addition to what had theretofore been adjudicated):

1. That Charles was entitled to a share of the post-dissolution profits attributable to the use of his share of the partnership assets.

2. That Charles was entitled to compensation for his services in the continuing business.

3. That Charles was not limited to 23.96 per cent of the post-dissolution profits because the contribution of his services in managing the ranch had not been taken into consideration.

The 23.96 percentage was achieved in this way:

PARTNERS' CAPITAL: Gross assets of partnership (with value of partnership real estate, improvements and supplies fixed at $235,000) less gross liabilities.

| Balance, at 33⅓ per cent each | Nick Vangel | Ernest Vangel | Charles Vangel | Total |
|---|---|---|---|---|
| | $67,611.98 | $67,611.99 | $67,611.99 | $202,835.96 |

Adjustments—Liability of Charles Vangel to Nick and Ernest Vangel in the amount of $25,000, plus interest at 7 per cent from April 16, 1945 to June 15, 1950

| | 17,021.23 | 17,021.23 | (34,042.46) | |

Liability of Nick and Ernest Vangel to Charles Vangel in amount of $14,000 (⅓ of $42,000), plus interest at 7 per cent from May 27, 1949 to June 15, 1950

| | (7,515.51) | (7,515.51) | 15,031.02 | |

| Financial interests | $77,117.70 | $77,117.71 | $48,600.55 | |

| Interest in percentages | 38.02% | 38.02% | 23.96% | |

After our decision, upon the retrial, the court found:

1. That this court affirmed the 23.96 per cent figure, both as to the former partnership interests and the post-dissolution profits from June 15, 1950, the adjudged dissolution date, "to and including the 1953 crops harvested and unharvested, *the cut-off date being May 12, 1953.*" (Finding III.)

2. That defendant's interest in the value of the ranch, at the time of dissolution, on the basis of 23.96 per cent was found by Judge Vickers to be $37,440.45; that this figure was affirmed by this court. (Finding IV.)

3. That defendant's interest "in capital assets (profits)" ... at the date of dissolution of the partnership [was] $48,600.55. (Finding IV.)

4. That defendant's interest in *post-dissolution* profits from June 15, 1950, to May 12, 1953 "the terminal date found by Judge Vickers and affirmed by the Supreme Court" amounted to $45,849.39. (Finding IV.)

5. That certain monies had been paid to plaintiffs subsequent to May 12, 1953, and up to October 13, 1953, and that defendant's interest therein was $9,024.74. (Finding IV.)

6. That the "total of Defendant's interest 'attributable to the use of Charles' (Defendant) share of assets' in the former partnership is $140,915.13." (Finding IV.)

7. That Charles had withdrawn from the total sum of $140,915.13 the sum of $81,999.45, leaving a balance due him of $58,915.68 (this latter sum is exclusive of the compensation found to be due to defendant as will hereinafter appear). (Finding VI.)

8. That Charles had not been the exclusive manager and supervisor of the ranch; that "much" of what defendant did was over the protest of the plaintiffs and not with their "full acquiescence"; that defendant's services were of the management type and not that of a mere employee; that the post-dissolution services rendered by defendant were from June 15, 1950, to November 10, 1953; that defendant rendered no services thereafter. (Finding VII, in part.)

9. "That it is true the value of services for managing and supervising a citrus ranch the size of the cultivated portion of the Cascade Ranch is from $193.75 to $233.50 a month. The court finds that the services of Defendant are worth on the average not to exceed $200 a month for the period from June 15, 1950, to November 10, 1953, or a total amount of $8,200.00." (Finding VII.)

10. It was provided that because of a stipulation entered into between the parties, defendant was to pay 23.96 per cent of $1,950 charged by an accountant employed by the parties. (Finding VIII.)

Charles contends that the trial court erred in terminating his right to profits as of May 12, 1953. In subheading 4, just set forth, we pointed out that Finding IV is to the effect that Judge Vicker's finding of the terminal date as May 12, 1953, was affirmed by this court. There is no such affirmation. In commenting upon the decision of the District Court of Appeal in *Vangel* v. *Vangel,* 116 Cal.App.2d 615

[254 P.2d 919], we said that Charles' right to participate in post-dissolution profits ''should not have been terminated as of January 1, 1951. That period, it was determined, should extend so as to include the proceeds from fruit substantially matured and soon ready for marketing, the final date to be left to the sound judgment of the chancellor.'' (*Vangel* v. *Vangel*, 45 Cal.2d 804, 806 [291 P.2d 25, 55 A.L.R.2d 1385].) In a memorandum ruling signed February 4, 1957, by Judge Clarence M. Hanson it is stated: ''The findings of Judge Vickers, carried into the judgment he rendered, granted to the defendant 23.96 per cent of the value of the partnership property ($235,000) as of the date of dissolution on June 15, 1950, plus 23.96 per cent of the post-dissolution profits from June 15, 1950, to and including the 1953 crops harvested and unharvested on May 12, 1953, but as he did not include anything for the services rendered by the defendant from June 15, 1950, to that date, the judgment was reversed with instructions to ascertain the amount. *The Supreme Court did not suggest that the cut-off date was to be May 12, 1953, but that is probably what it had in mind. However, if a later date should be proper, as the defendant contends, it may not in any event go beyond November 10, 1953. . . .''* The memorandum opinion then sets forth part of an affidavit signed by Charles wherein he states he has done no work on the ranch subsequent to November 10, 1953. November 10, 1953, was apparently the date judgment was entered after the third trial.

In the alternative, Charles argues that if he is not entitled to a share of the profits subsequent to May 12, 1953, that he is entitled to interest on the balance due him as of that date. Section 15042 of the Corporations Code provides that a partner in Charles' position is entitled to ''an amount equal to the value of his interest in the dissolved partnership'' *or* ''In lieu of interest the profits attributable to the use of his right in the property of the dissolved partnership.'' The District Court of Appeal noted (116 Cal.App.2d 629) that ''From the position defendant has taken on this appeal it is fair to say that *he has elected to take profits rather than interest on the value of his share of the partnership.''* (See also *Vangel* v. *Vangel*, 45 Cal.2d 804, 808 [291 P.2d 25, 55 A.L.R. 2d 1385].)

By Charles' own admission, he performed no services after November 10, 1953, the date on which the trial court terminated any right to compensation for services. He does argue that his services had been found, on a prior trial, to be worth

$750 per month as compared with the $200 per month awarded him on the instant trial. It is sufficient to note that new evidence was adduced at the trial, the judgment of which is now under consideration, and that there is ample evidence in the record to substantiate the trial court's finding that Charles' services were worth $200 per month, or a total amount of $8,200.

Charles argues, as he has done before, that the 23.96 per cent figure is incorrect and seeks to relitigate the disposition of the two items of $25,000 and $42,000 which were discussed at length in *Vangel* v. *Vangel,* 116 Cal.App.2d 615, 629-630 [254 P.2d 919], and in *Vangel* v. *Vangel,* 45 Cal.2d 804, 807 [291 P.2d 25, 55 A.L.R.2d 1385]. We did not say, in the latter case, that the 23.96 per cent figure was incorrect because of the disposition of the two amounts, but that Charles' share of the post-dissolution profits was incorrect because his right to compensation had not been taken into consideration. There is no merit to this contention inasmuch as the matter is res judicata.

There is no merit to Charles' contention that the trial court erred in applying the provisions of section 15038, subdivision (2b) of the Corporations Code. This was held to be correct and proper in *Vangel* v. *Vangel,* 116 Cal.App.2d 615, 628 [254 P.2d 919], and reaffirmed by this court in *Vangel* v. *Vangel,* 45 Cal.2d 804, 808 [291 P.2d 25, 55 A.L.R. 2d 1385].

There is no merit to Charles' contention that he is entitled to share in what he claims is the present value of the ranch, the sum of $2,000,000. His claim is based on his argument that because of the location of the ranch it *will* have that value for subdivision purposes. In *Vangel* v. *Vangel,* 116 Cal.App.2d 615, 633 [254 P.2d 919], the court noted that the valuation of $235,000 placed on the ranch by the trial court at the date of dissolution of the partnership was "definitive of that question." Furthermore, section 15042 of the Corporations Code provides that the retiring partner's interest *"at the date of dissolution"* shall be ascertained. (See *Vangel* v. *Vangel,* 116 Cal.App.2d 615, 627, 628, 629 [254 P.2d 919].)

Plaintiffs argue that the sum of $38,090.45 ($37,440.45 plus $650 interest) has been available to Charles since September 10, 1953. This statement is substantiated by the record. Charles' Exhibit "A," the Pritkin, Finkel and Company Accountants' Report, page 2, shows such deposits in escrow to

Charles' account. Plaintiffs also point out that the amount of the judgment ($67,115.68) after the fourth trial, has been in escrow since May 3, 1953. The record shows (Charles' Exhibit "A") that from the $38,090.45 deposited in September, 1953, Charles has withdrawn the sum of $6,982.10. The record also shows (as reflected in the findings) that Charles had made other withdrawals in the sum of $75,017.35.* It was then found that Charles had a balance due him of $58,915.68 plus the sum of $8,200 as compensation for his services, making a total due Charles of $67,115.68, which has been deposited in escrow to Charles' account since May, 1957. It appears to us that the trial court correctly carried out the mandate of the District Court of Appeal and that of this court and that there has been no error. After the amounts due Charles as his original share of the partnership assets had been deposited to his order, it is obvious that no profits were due him from the use of such assets. Charles' interest in the real property had been adjudged to be $37,440.45; his interest as of June 15, 1950 (the date of dissolution), is shown by his Exhibit "A" to be $48,600.55; his share of the post-dissolution profits from June 15, 1950 to May 12, 1953, as shown by Charles' Exhibit "A" amount to $45,849.39; and his share of the profits on the 1952-1953 crop which was apparently harvested by October 13, 1953, amount to $9,024.74, or a total balance of $140,915.13. Charles' withdrawals from this amount have been heretofore set forth. It will be recalled that in *Vangel* v. *Vangel*, 116 Cal.App.2d 615, 630 [254 P.2d 919], it was held that Charles should be entitled to his share of the proceeds of a "crop substantially matured and soon ready for market. While no formula or precise definition can be laid down to determine when such fruit has substantially matured, this determination can properly be left to the sound judgment of the chancellor." As heretofore noted, there was no petition for hearing after that decision, and our opinion in *Vangel* v. *Vangel*, 45 Cal.2d 804 [291 P.2d 25, 55 A.L.R.2d 1385], did not disturb that holding. While we did not, as found by the trial court during this trial, approve May 12, 1953, as a "cut-off" date, we did not hold otherwise and reversed only for the purpose of allowing Charles compensation for his post-dissolution managerial efforts on behalf of the partnership. Since the trial court has here, in its sound

---

*It appears from a letter written by Judge Hanson, dated April 11, 1957, to the attorneys of record, that defendant Charles had received this sum directly from the partnership.

judgment, aided by the reports of several qualified accountants determined that Charles' interests are as have been heretofore set forth, and since there has been no judicial error, there appears to be no reason to disturb its judgment.

■ From what has just been said it is clear that there is no merit to Charles' contention that his right to participate in the partnership profits should not have been terminated as of May 12, 1953, since it appears from the record that he was allowed profits on the 1952-1953 crop to October 13, 1953, which would be the latest date that any profits could have accrued from his interest in the partnership real property. As heretofore set forth, Charles' share of the value of the partnership real property was deposited in escrow to his account on September 10, 1953.

■ Charles also argues that he cannot be put to an election between interest and profits until the amount due him has been finally settled. This argument stems from the statement made by the District Court of Appeal, 116 Cal.App.2d 615, 630, that since the accounts of the partnership had not been "properly settled . . .. he was not required to accept the offer made to purchase his share after the rendition of final judgment, since the accounting should have proceeded 'upon different principles than did the accounting which was actually taken.' (*Nuland* v. *Pruyn, supra* [99 Cal.App.2d 603 (222 P.2d 261)])." The same court pointed out, however, that "From the position defendant has taken on this appeal it is fair to say *that he has elected to take profits rather than interest on the value of his share* in the partnership." (116 Cal.App.2d 615, 629.)

Charles also claims that he is entitled to interest on the amount found to be due him until that amount is either paid, or made available to him. From what has been heretofore said it is obvious that there is no merit to this argument.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.