Anita **VALTIERRA** et al., Plaintiffs,

v.

The **HOUSING AUTHORITY OF** the
**CITY OF SAN JOSE** et al.,
Defendants.

**Gussie HAYES** et al., Plaintiffs,

v.

**HOUSING AUTHORITY OF SAN
MATEO**, Defendant.

**Nos. 52076, C–69–1–RFP.**

United States District Court,
N. D. California.

March 23, 1970.

Probable Jurisdiction Noted
June 8, 29, 1970.

See 90 S.Ct. 1873, 2247.

Don B. Kates, Jr., Brian Paddock, Diane V. Delevett, Peter D. Coppelman, Gilroy, Cal., Legal Aid Society of Santa Clara County, San Jose, Cal., National Housing Law Project, Earl Warren Legal Center, Berkeley, Cal., Legal Aid Society of S.M.C., Redwood City, Cal., Legal Aid Society of S.M.C., Menlo Park, Cal., for plaintiffs.

City Atty., Robert S. Sturges, San Jose, Cal., U. S. Atty., for defendants.

Before HAMLIN, Circuit Judge, and PECKHAM and LEVIN, District Judges.

PECKHAM, District Judge.

This matter comes before this Court on plaintiffs' motions for summary judgment, their applications for an injunction, and defendants' motions to dismiss. Plaintiffs ask that we declare Article XXXIV of the California State Constitution [1] to be unconstitutional and request that we forbid defendants from relying upon it as *a* reason for not requesting federal assistance with which to finance low-income housing. We hold Article XXXIV to be unconstitutional. *See* Hunter v. Erickson, 393 U.S. 385, 89 S.Ct. 557, 21 L.Ed.2d 616 (1969).

■ Title 42 U.S.C. § 1983 creates a cause of action for the deprivation, under color of state law, of any right, privilege or immunity guaranteed by the United States Constitution. In this case, the non-federal defendants are acting under color of Article XXXIV in not requesting federal assistance. Equal protection cases brought to remedy discrimination against the poor (*e. g.*, Rinaldi v. Yeager, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966); Harper v. Virginia State Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969)), have long been entertained under § 1983. Jurisdiction to hear this case is conferred upon this Court by 28 U.S.C. § 1343(3), (4).

■ This case is required to be heard by a three-judge court by 28 U.S.C. §§ 2281, 2284, as plaintiffs seek an injunction enjoining defendant local officials

---

1. ARTICLE XXXIV
PUBLIC HOUSING PROJECT LAW
§ 1. Approval of electors; definitions

Section 1. No low rent housing project shall hereafter be developed, constructed, or acquired ·in any manner by any state public body until, a majority of the qualified electors of the city, town or county, as the case may be, in which it is proposed to develop, construct, or acquire the same, voting upon such issue, approve such project by voting in favor thereof at an election to be held for that purpose, or at any general or special election.

For the purposes of this article the term "low rent housing project" shall mean any development composed of urban or rural dwellings, apartments or other living accommodations for persons of low income, financed in whole or in part by the Federal Government or a state public body or to which the Federal Government or a state public body extends assistance by supplying all or part of the labor, by guaranteeing the payment of liens, or otherwise. For the purposes of this article only there shall be excluded from the term "low rent housing project" any such project where there shall be in existence on the effective date hereof, a contract for financial assistance between any state public body and the Federal Government in respect to such project.

For the purposes of this article only "persons of low income" shall mean persons or families who lack the amount of income which is necessary (as determined by the state public body developing, constructing, or acquiring the housing project) to enable them, without financial assistance, to live in decent, safe and sanitary dwellings, without overcrowding.

from enforcing a state constitutional provision (see A.F.L. v. Watson, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873 (1946)) on the ground of its repugnance to the Equal Protection Clause.

Two cases are consolidated for consideration. The first is Valtierra v. Housing Authority of San Jose No. 52076. The parties plaintiff are "persons of low income," who have been determined to be eligible for public housing, and who have been placed on the appropriate waiting lists. They are unable to occupy public housing because at present none is available. The second case, Gussie Hayes et al. v. Housing Authority of San Mateo, No. C–69–1–RFP, is consolidated with the first because of the identity of the legal issue, and is brought by similarly situated poor persons, predominately Negro, on the waiting list for public housing in San Mateo County.

Plaintiffs have demonstrated that Article XXXIV has impeded the financing of new housing, only 52% of the referenda submitted to the voters have been approved, even though they cannot of course demonstrate that any particular named plaintiff would be able to occupy new housing if such housing were built. In Santa Clara County, the voters defeated the referendum seeking permission to obtain housing funds in 1968, and in San Mateo County two similar referenda were defeated in 1966. Housing Director Wemen, in San Mateo County, feels it would be fruitless to attempt another referendum at present. [Affidavit J to Hayes complaint.] Plaintiffs' position is that but for the existence of Article XXXIV, local housing authorities would be able to apply for federal assistance if they chose; they further submit that there is evidence that in fact they would so choose. [See Valtierra complaint p. 8].

There are three groups of defendants in the Valtierra case: the Housing Authority of the City of San Jose, a public entity, and its members in their official capacity; the City Council of San Jose, a public entity, and its members, in their official capacity; and the Department of Housing and Urban Development and its Secretary, George Romney. All three groups have filed responsive pleadings. There is only one defendant in the Hayes case, the Housing Authority of San Mateo County. The Court notes that this defendant has not made an appearance in the case, but rather has chosen to stand mute.

The federal defendants, the Department of Housing and Urban Development (HUD), and its Secretary, George Romney, move for dismissal on the ground that, as to them, the Valtierra complaint does not state a claim upon which relief can be granted. Fed.R.Civ. P. Rule 12(b) (6). The complaint does not seek any relief against the federal defendants; their joinder is not necessary in order to grant the relief that is requested. Therefore this Court ORDERS that their motion for dismissal be granted. Accordingly, the federal defendants are dismissed from this lawsuit. The Hayes case does not involve any federal defendants.

The two non-federal defendants in the Valtierra case, viz., the Housing Authority of San Jose, and the City Council of San Jose, raise several pleas in abatement which do not preclude this Court from reaching the merits of plaintiffs' constitutional claim. First, defendants contend that because California could decline to participate in the program established by the Housing Act of 1937, that California can participate on any condition. This is not the case. Certainly a condition that no Negro could occupy such low-income housing would be unconstitutional. Second, they assert that referenda are not subject to constitutional scrutiny. This is not the law. Hunter v. Erickson, supra. Third, defendants erroneously believe plaintiffs are asking this Court to compel the Housing Authorities to seek federal funding. However, plaintiffs only seek an injunction forbidding the named local officers from relying on Article XXXIV as a reason for not requesting such funds. There may be any number of reasons, quite apart from Article XXXIV

why the Housing Authorities might not wish to seek federal funds at any given point in time.

We find plaintiffs' Supremacy Clause argument to be unpersuasive and therefore do not decide the case on that ground. Plaintiffs' Privileges and Immunities argument is not reached as this court decides the case on Equal Protection grounds.

## PLAINTIFFS' EQUAL PROTECTION ARGUMENT

■ The starting point for this argument is the now well-established standard that classifications based on race are "constitutionally suspect," Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954), and those based on property "traditionally disfavored," Harper v. Virginia State Board of Elections, 383 U.S. 663, 668, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966). Both bear a far heavier burden of justification than other classifications. *See*, McLaughlin v. Florida, 379 U.S. 184, 194, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964).

■ The gravamen of plaintiffs' Equal Protection claim is that the express discrimination in Article XXXIV, as it applies only to "low-income persons", brings it squarely within the ban of a long line of Supreme Court decisions forbidding the unequal imposition of burdens upon groups that are not rationally differentiable in the light of any legitimate State legislative objective. *E. g.*, Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965); Baxstrom v. Herold, 383 U.S. 107, 86 S. Ct. 760, 15 L.Ed.2d 620 (1966); and Rinaldi v. Yeager, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966). As characterized by the Court in McLaughlin v. Florida, 379 U.S. at 191, 85 S.Ct. at 288:

> Judicial inquiry under the Equal Protection Clause, * * * does not end with a showing of equal application among the members of the class defined by the legislation. The courts must reach and determine the question * * * whether there is an arbitrary or invidious discrimination between those classes covered * * * and those excluded.

It is no longer a permissible legislative objective to contain or exclude persons simply because they are poor. Edwards v. Calif., 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. 119 (1941); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L. Ed.2d 600 (1969). *Cf.*, Griffin v. Illinois, 351 U.S. 12, 16–17, 76 S.Ct. 585, 100 L.Ed. 891 (1956).

■ In addition to asserting that Article XXXIV denies equal protection of the laws to persons who are poor, the *Hayes* plaintiffs assert that it also denies equal protection to those who are Negro. Although Article XXXIV does not specifically require a referendum for low-income projects which will be predominantly occupied by Negroes or other minority groups, the equal protection clause is violated if a "special burden" is placed on those groups by the operation of the challenged provision, if "the reality is that the law's impact falls on the minority." Hunter v. Erickson, *supra*, 393 U.S. at 391, 89 S.Ct. at 560.

Thus, last term, the Supreme Court in Hunter v. Erickson, *supra*, applied to the housing area the constitutional requirement for equal protection. In that case, the Supreme Court invalidated an amendment to the City Charter of Akron, Ohio, which required a referendum before anti-discrimination legislation could be enacted. The Court held this to be impermissible, stating that it violated the Equal Protection Clause for at least three reasons:

■ First, only laws designed to end housing discrimination were required to run the gauntlet of a referendum, and the state cannot make it more difficult to enact legislation on behalf of one group than on behalf of others. The *Hunter* court speaking through Mr. Justice White states, 393 U.S. at 390–391, 89 S.Ct. at 560:

> It is true that the section [requiring a referendum before action may be tak-

en] draws no distinction among racial and religious groups. Negroes and whites, Jews and Catholics are all subject to the same requirements if there is housing discrimination against them which they wish to end. But § 137 [requiring the referendum] nevertheless disadvantages those who would benefit from laws barring racial * * * discrimination as against those who would bar other discriminations or who would otherwise regulate the real estate market in their favor. The automatic referendum system does not reach housing discrimination on sexual or political grounds, or against those with children or dogs, nor does it affect tenants seeking more heat or better maintenance from landlords, nor those seeking rent control, urban renewal, public housing, or new building codes.

Second, the law's impact falls on minorities, resulting in an impermissible burden which constitutes a substantial and invidious denial of equal protection.

"Moreover, although the law on its face treats Negro and white, Jew and gentile in an identical manner, the reality is that the law's impact falls on the minority. The majority needs no protection against discrimination and if it did, a referendum might be bothersome but no more than that. Like the law requiring specification of candidates' race on the ballot [citation omitted], § 137 places special burdens on racial minorities within the governmental process. This is no more permissible than denying them the vote, on an equal basis with others. [citations omitted] 393 U.S. at 391, 89 S.Ct. at 560."

Lastly, the Court noted, 393 U.S. at 392, 89 S.Ct. at 561:

* * * [I]nsisting that a State may distribute legislative power as it desires and that the people may retain for themselves the power over certain subjects may generally be true, but these principles furnish no justification for a legislative structure which otherwise would violate the Fourteenth Amendment. Nor does the implementation of this change through popular referendum immunize it. [Citations omitted.] The sovereignty of the people is itself subject to * * * constitutional limitations * * *.

■ Here, as in the *Hunter* case, the "special burden" of a referendum is not ordinarily required; here, as in the *Hunter* case, the impact of the law falls upon minorities.[2] The vice in this case is that Article XXXIV makes it more difficult for state agencies acting on behalf of the poor and the minorities to get federal assistance for housing than for state agencies acting on behalf of other groups to receive financial federal assistance. In California, state agencies may seek federal financial aid, without the burden of first submitting the proposal to a referendum, for all projects except low-income housing. Some common examples, *inter alia*, are: highways, urban renewal, hospitals, colleges and universities, secondary schools, law enforcement assistance, and model cities. Further, even though federal assistance for state housing agencies is a privilege which California need not seek at all, the requirements of equal protection must still be met. United States v. Chicago, M., St. P. & P. RR., 282 U.S. 311,

2. That minority groups comprise "the poor" is increasingly clear. In his affidavit, Mr. Franklin Lockfeld, Senior Planner for the Santa Clara County Planning Department stated: "The low-income areas are closely related to the areas of concentration of minority residents and high income areas are closely related to the nearly all white sections of the community. * * * In 1960, only 5% of the units occupied by white-non-Mexican-Americans were in delapidated or deteriorated condition, while 23% of the units occupied by Mexican-Americans and 20% of the units occupied by non-whites were in delapidated or deteriorated condition. Minorities were thus over represented in the less than standard housing by greater than four to one, and occupied nearly one-third of the deteriorating and delapidated housing in the County in 1960."

**6**

328–329, 51 S.Ct. 159, 75 L.Ed. 359 (1931); Sherbert v. Verner, 374 U.S. 398, 404 (1963); Shapiro v. Thompson, *supra*.

Defendants argue that Article XXXIV does not violate the Equal Protection Clause because it was not the product of unconstitutional motivations. However, although proof of bad motive may help to prove discrimination, lack of bad motive has never been held to cure an otherwise discriminatory scheme. Certainly *Hunter* does not demand a demonstration of improper motivation.

Accordingly, plaintiffs' motions for summary judgment, declaring Article XXXIV to be unconstitutional, and their applications for an injunction are granted.

It is so ordered.