[Civ. No. 12699. Third Dist. Nov. 17, 1970.]

G & D HOLLAND CONSTRUCTION COMPANY et al.,
Plaintiffs and Appellants, v.
CITY OF MARYSVILLE et al., Defendants and Respondents.

## Counsel

Rich, Fuidge, Dawson, Marsh, Morris, Sanbrook & Noonan and Charles C. Dawson, Jr., for Plaintiffs and Appellants.

Steel & Arostegui, Albert J. Arostegui and Timothy J. Evans for Defendants and Respondents.

## OPINION

FRIEDMAN, J.—There are triable issues of fact in this mandate proceeding and the trial court erred in granting a summary judgment in favor of respondents, the City of Marysville and its officials.

Subject of the controversy is a land use proposal involving a square block of real estate in a section of the city known as East Marysville. Petitioners seek a writ of mandate to compel issuance of a building permit for an apartment house development on the property. The project, to consist of six buildings containing 76 apartment units, is to be financed under a provision of the National Housing Act authorizing government interest subsidies on housing designed for "lower income families." (12 U.S.C.A. § 1715z-1, Public Law 90-448, tit. II, § 201(a); 82 Stat. 498.)

The city's basic zoning ordinance, of which we take judicial notice, was adopted in 1963. At that time the block in question was zoned R-3. That designation signified a "neighborhood apartment district," permitting a maximum of four family dwellings per building. In 1966 the property owner requested that this single block be rezoned to R-4 (general apartment district) in order to accommodate a "garden type" apartment house. After a hearing the municipal planning commission found that R-4 was the "highest and best use" of the property and was "consistent with the present growth and development in the immediate area . . . ." The city council acceded to the request and adopted an ordinance rezoning the block to R-4. The garden type apartment project did not materialize.

The disputed block is not part of a larger R-4 neighborhood but is individually zoned. Immediately to its north and east is a neighborhood zoned R-1 (single family residence district). A number of other R-4 areas, ranging from 1 to 10 square blocks in size, also adjoin the R-1 neighborhood. An R-3 area lies in the immediate vicinity. Two or three blocks distant and also juxtaposed to the R-1 neighborhood is an area zoned C-1 (neighborhood shopping district).

On January 5, 1970, petitioners presented their building plans to the city's building official and applied for a building permit. There appears to be no dispute but that the project fitted the R-4 zoning classification. On January 14 a group of citizens appeared at a meeting of the city planning commission, objecting to petitioners' proposal. The next day, January 15, the city engineer issued a letter addressed to "residents of the City of Marysville" declaring that storm drainage had entered the city's sanitary sewers the previous day and had seriously overloaded the sewerage system. On January 16 a special meeting of the city council was held with three of the five council members present. Orally and by petition numerous citizens pro-

tested petitioners project, declaring that it would depress neighborhood values. The city's building official informed the council that petitioners' project could be brought into compliance with the building code. The council adopted a resolution directing the building official temporarily to withhold the building permit.

On January 20 petitioners appeared before the building official, made minor plan revisions suggested at an earlier meeting and tendered the permit fee. The fee was not accepted. On January 23 the city council met again, four members being present. At that meeting the council, with the concurrence of the members present, adopted an ordinance returning the single block in question to the R-3 classification it had occupied prior to 1966. The ordinance declared its immediate effectiveness as an urgency measure.[1]

The petition for writ of mandate alleges that the R-3 zoning classification forestalls petitioners' development, which consists of buildings of more than four units; alleges that the sole purpose of the ordinance of January 23, 1970, was frustration of the project; alleges that no valid reason existed to justify rezoning this property from R-4 to R-3; alleges that the only urgency attending the zoning change was the project itself and the city council's desire to frustrate its construction.

■ ■ The aim of the summary judgment procedure is to discover, through affidavits, whether the parties possess evidence requiring the weighing procedure of a trial; the motion may be granted only if no triable issue of fact appears; the court may not pass upon the issue itself. (*Wilson* v. *Bittick*, 63 Cal.2d 30, 34 [45 Cal.Rptr. 31, 403 P.2d 159].) ■ The city's motion for summary judgment was premised upon the theory that no triable issue of fact existed, because one or more police power objectives

---

[1]The Marysville ordinance adopted January 23, 1970, bore the following declaration of urgency:

"The area of the City of Marysville commonly known as 'East Marysville' is predominantly residential in character. Proposals have been submitted to the City Council to consider and study rezoning the area to limit its use consistent with its predominant residential character, and the City Council intends to study such proposals within a reasonable time and to submit the same to the Planning Commission for its consideration and study; and that zoning plans for the area will be presented within a reasonable time after this ordinance becomes effective. Evidence has been presented to the Council of the establishment of nonconforming uses which could be destructive of the zoning proposals under consideration and defeat the execution of any zoning plan resulting from such study in whole or in part.

"The City Council further finds and declares that the public health, safety, and welfare could be protected and benefitted by prohibiting such nonconforming uses and uses which may be in conflict with the contemplated zoning proposals."

We assume that the Marysville Charter permits (or incorporates the provisions of state law permitting) the adoption of temporary zoning ordinances without the hearing procedure demanded for permanent ordinances. (See Gov. Code, §§ 65803, 65858.)

(e.g., the prevention of sewer overloading) justified the interim ordinance and precluded further judicial review of its constitutionality.

■ In inquiring into the facts forming the constitutional basis for exercises of the police power, the courts simply determine whether the statute or ordinance reasonably relates to a legitimate governmental purpose. (*Wilke & Holzheiser, Inc.* v. *Department of Alcoholic Bev. Control,* 65 Cal.2d 349, 359 [55 Cal.Rptr. 23, 420 P.2d 735]; *Consolidated Rock Products Co.* v. *City of Los Angeles,* 57 Cal.2d 515, 522 [20 Cal.Rptr. 638, 370 P.2d 342].) ■ City and county zoning ordinances are manifestations of the local police power conferred by section 7 (formerly § 11) of article XI of the state Constitution. (*Miller* v. *Board of Public Works,* 195 Cal. 477, 482-483 [234 P. 381, 38 A.L.R. 1479]; *People* v. *Johnson,* 129 Cal.App.2d 1, 5-6 [277 P.2d 45].) Thus, upon a claim that a comprehensive zoning ordinance unconstitutionally interferes with the use of private property, the ordinance is to be tested not by the judges' opinions of its wisdom or necessity, "but solely by the answer to the question is there any reasonable basis in fact to support the legislative determination of the regulation's wisdom and necessity?" (*Consolidated Rock Products Co.* v. *City of Los Angeles, supra,* 57 Cal.2d at p. 522; see also, *Acker* v. *Baldwin,* 18 Cal.2d 341, 344 [115 P.2d 455]; *Miller* v. *Board of Public Works, supra,* 195 Cal. at p. 490.)

■ The principle limiting judicial inquiry into the legislative body's police power objectives does not bar scrutiny of a quite different issue, that of discrimination against a particular parcel of property. "A city cannot unfairly discriminate against a particular parcel of land, and the courts may properly inquire as to whether the scheme of classification has been applied fairly and impartially in each instance." (*Wilkins* v. *City of San Bernardino,* 29 Cal.2d 332, 338 [175 P.2d 542].)

■ Every intendment favors the legislative body's action, which will not be overthrown in the absence of physical facts requiring the conclusion that the ordinance is unreasonable and invalid as a matter of law. (*Wilkins* v. *City of San Bernardino, supra,* 29 Cal.2d at p. 338; *Anderson* v. *City Council of Pleasant Hill,* 229 Cal.App.2d 79, 91 [40 Cal.Rptr. 41].) Nevertheless, where "spot zoning" or other restriction upon a particular property evinces a discriminatory design against the property user, the courts will give weight to evidence disclosing a purpose other than that appearing upon the face of the regulation. (*Sunset View Cemetery Assn.* v. *Kraintz,* 196 Cal.App.2d 115, 122-124 [16 Cal.Rptr. 317]; *Kissinger* v. *City of Los Angeles,* 161 Cal.App.2d 454, 460-462 [327 P.2d 10]; *Munns* v. *Stenman,* 152 Cal.App.2d 543, 552-554 [314 P.2d 67]; *County of San Diego* v. *Williams,* 126 Cal.App.2d 804, 808-809 [272 P.2d 519];

*Bernstein* v. *Smutz,* 83 Cal.App.2d 108, 117-122 [188 P.2d 48]; see also, *Russian Hill Improvement Assn.* v. *Board of Permit Appeals,* 66 Cal.2d 34, 37-38, fn. 5 [56 Cal.Rptr. 672, 423 P.2d 824]; *Reynolds* v. *Barrett,* 12 Cal.2d 244, 251 [83 P.2d 29]; 1 Anderson, American Law of Zoning (1968) § 5.05, p. 248, text accompanying fn. 17; 1 Rathkopf, The Law of Zoning and Planning (3d ed.) pp. 26-4 to 26-14.)

■ In support of its motion the City of Marysville had presented affidavits showing that in March 1969 it had established a Redevelopment Agency pursuant to the Community Redevelopment Law;[2] that in September 1969 the city had employed a research firm to prepare an economic analysis of the city and data for a "workable program" application to the federal Department of Housing and Urban Development, involving urban development and expansion of housing for low and moderate income families; that sewerage and drainage facilities in East Marysville had become seriously inadequate; that of the 1,485 acres of useable real estate in the city, 155 acres remained undeveloped. In opposition, petitioners filed a single affidavit alleging that the objecting citizens were concerned only with frustrating petitioners' project and revealing that in October 1969 the city engineer had indicated the availability of sewerage services for the project.

■ Absence of counteraffidavits contradicting all the city's declarations did not relieve the latter of the burden of establishing all the facts necessary to entitle it to a summary judgment. (*Schroeter* v. *Lowers,* 260 Cal.App.2d 695, 699 [67 Cal.Rptr. 270].) ■ The city's affidavits displayed a series of abstract circumstances without demonstrating their relevance to the particular regulatory action. Although a real problem of municipal sewage disposal existed, the affidavits exhibited only a chimerical connection between that problem and the highly selective reduction of population density in a single square block of the neighborhood.[3] The affidavits did not tie this selective rezoning to an existing general plan.[4] Although the urgency clause of the interim ordinance had mentioned "proposals" for rezoning the entire area consistently with residential uses, the affidavits cited no tangible proposals of the sort. They revealed no connection between such "proposals" and the reclassification of a single square block from R-4 to R-3; exhibited no relationship between pending urban

[2]Health and Safety Code, section 33000 et seq.

[3]At oral argument in this court, counsel agreed that the R-3 classification would reduce the maximum population of the square block to 40 families, as contrasted with the 78 apartment units projected by petitioners under the R-4 classification. How the new population ceiling would rescue the sewerage system or prevent its further deterioration is unexplained.

[4]The petition for mandate alleges and the answer admits that the City of Marysville has not adopted a general zoning plan. (Cf. Gov. Code, § 65860.)

renewal studies and reduction in the maximum apartment units permitted on that single block; showed no change in general neighborhood conditions since the 1966 rezoning of that same block. (See *Scrutton* v. *County of Sacramento,* 275 Cal.App.2d 412, 419-420 [79 Cal.Rptr. 872].)

The issues framed by the pleadings evoked judicial review more intense than that posed by a generalized exercise of police power. They called upon the trial court to determine whether the city council's action represented a discriminatory exercise of legislative power or a choice between legitimate environmental values. In its inquiry the court was not limited to the face of the ordinance, but could receive evidence of its immediate purpose, its ultimate objective and of the circumstances attending its adoption. (*Reitman* v. *Mulkey,* 387 U.S. 369, 373 [18 L.Ed.2d 830, 833, 87 S.Ct. 1627]; *Mulkey* v. *Reitman,* 64 Cal.2d 529, 533-534 [50 Cal.Rptr. 881, 413 P.2d 825].) Seldom may such an inquiry be pursued through the brusque summary judgment procedure—not, at least, where the complainant shows a justiciable interest. Rather, the inquiry calls for the refined sifting process of a trial; for cross-examination to probe and strip the pretensions of witnesses, lay and expert; for the creation of a record permitting findings in terms of genuine purpose and effect, as well as meaningful appellate review of those findings. The city's affidavits failed to establish validity of the interim rezoning ordinance as a matter of law. The trial court erred by granting a summary judgment which prevented petitioners from producing evidence of discriminatory purpose aimed at the single square block and their particular project.

Petitioners have cited decisions invalidating on equal protection grounds zoning restrictions designed to prevent low-income housing developments. In one case, for example, a trial of the factual issues had resulted in a finding that the regulation was racially motivated, arbitrary and unreasonable. (*Dailey* v. *City of Lawton, Oklahoma* (10th Cir. 1970) 425 F.2d 1037.) Petitioners argue that a zoning classification discriminating against poor persons is no less a denial of equal protection than one which is racially motivated. (See *Department of Mental Hygiene* v. *Kirchner,* 60 Cal.2d 716, 721 [36 Cal.Rptr. 488, 388 P.2d 720, 20 A.L.R.3d 353], 62 Cal.2d 586 [43 Cal.Rptr. 329, 400 P.2d 321, 20 A.L.R.3d 361]; *Valtierra* v. *Housing Authority of City of San Jose* (N.D.Cal. 1970) 313 F.Supp. 1, 4, probable jurisdiction noted 399 U.S. 925 [26 L.Ed.2d 790, 90 S.Ct. 1873, 2247].) The summary judgment must be reversed for the reasons described earlier, and the case must go to trial. The charge of economic discrimination has not been exposed to trial court inquiry or findings and we do not pass upon it.

■ The City of Marysville seeks affirmance on the strength of several claims not voiced in the affidavits before the trial court. They assert that

the applicant for the building permit, G & D Holland Construction Company, a corporation, had no contractor's license at the time of the original application; rather, that a contractor's license was held by George Holland, an individual doing business as Holland Construction Company. They allege also that petitioners' FHA interest subsidy commitment expired pending this appeal. In reviewing a summary judgment the appellate court considers only the facts before the trial court, disregarding new allegations urged on appeal. (*Dryer* v. *Dryer,* 231 Cal.App.2d 441, 450-451 [41 Cal. Rptr. 839]; *Green* v. *Green,* 215 Cal.App.2d 37, 46 [30 Cal.Rptr. 23].) These claims were not before the trial court on the summary judgment motion and will not be considered here.

The city noticed a motion to dismiss this appeal as moot because, pending the appeal, hearings before the planning commission and the city council had culminated in the latter's adoption of a permanent ordinance on October 5, 1970, rezoning the single block to R-3. We took the motion to dismiss under submission at the time we heard oral argument on the appeal. There are two reasons for denying the motion: First, it is an indirect attempt to procure an affirmance of the summary judgment by factual claims not made in the trial court. (*Dryer* v. *Dryer, supra; Green* v. *Green, supra.*) Second, the permanent ordinance, equally with the interim ordinance, is susceptible to petitioners' charge of discriminatory purpose, a charge which was not allayed by the affidavits filed in support of the summary judgment motion.

The motion to dismiss the appeal is denied. The summary judgment is reversed.

Pierce, P. J., and Janes, J., concurred.

A petition for a rehearing was denied December 15, 1970, and respondents' petition for a hearing by the Supreme Court was denied January 14, 1971.