# EDITH M. SANDERSON AND OTHERS v. CITY OF WILLMAR.

162 N. W. (2d) 494.

November 1, 1968—No. 40858.

2

*Ronald C. Anderson,* for appellant.
*Willette, Zeug & Kraft,* for respondents.

NELSON, JUSTICE.

Edith Sanderson and others instituted an action against the city of Willmar, a municipal corporation, to permanently enjoin it from rezoning their property located in block 50 of said city from "business and commercial" to "automobile parking."

After trial without a jury, the proposed ordinance was held invalid, and defendant city was permanently enjoined from the third reading, publication, and adoption of the ordinance. Defendant appeals from the judgment entered.

The record discloses that the city of Willmar on January 27, 1960, adopted Ordinance No. 2.015, providing for basic land uses and zoning and including by reference the "City of Willmar Zoning Map." Section VII of the ordinance provided in part as follows:

"In BC, Commercial Districts the following regulations shall apply:

"Subdivision 1. Use Regulations

"A building may be erected or used, and a lot may be used or occupied, for any of the following purposes, and no other:

"a. Any use permitted in SECTION V, R-2, RESIDENCE DISTRICT, (MULTIPLE DWELLING), except that defined in Paragraph a. of SUBDIVISION 1., provided that such use comply with all use, height, area and yard regulations of the R-2, RESIDENCE DISTRICT (MULTIPLE DWELLING).

"b. Any use permitted in SECTION VI, CS, COMMUNITY STORE DISTRICT.

"c. Any use permitted in SECTION IX, AP, AUTOMOBILE PARKING DISTRICT."

On August 18 and September 1, 1965, proposed amendments to this ordinance were read which provided for removal and transfer of lots 4 through 13 in block 50 from the business and commercial district to the automobile parking district. Section IX of Ordinance No. 2.015 relates to automobile parking district, and subdivision 3 thereof reads:

"Subdivision 3. Procedures for Sale

"a. Should the owner of any property in the Automobile Parking District determine to sell the same, he shall inform the City Council of that fact in writing. The Council shall thereupon enter into negotiations with the said owner, or, at its option make determination as to whether there exist potential buyers for said property for uses to which it can be put under the provisions of this Ordinance. If the Council determines that there exist such potential buyer or buyers, it may, at its option so inform the owner, who shall then proceed to negotiate for sale to said potential buyer or buyers. If the owner and said prospects shall fail to enter into an agreement, that fact shall be reported to the City Council. Said report shall be in writing and shall state the highest and best terms offered and the price and terms requested by the owner thereof. The Council shall thereupon enter into further negotiations with the said owner. If the owner and the Council are unable to agree upon terms, the Council shall thereupon institute condemnation proceedings to acquire said property for city parking purposes. In the appraisal under said proceedings, the appraisers shall not take into consideration that said property is zoned for Automobile Parking purposes, but shall consider the value of said property as if the same have been zoned for purposes available to the immediately surrounding property, or if for two or more purposes, as if it were zoned the same as property that borders the most of its perimeter.

"b. Should the owner of any property in an area zoned for Automobile Parking receive an offer for the purchase of said property for use not permitted under this Ordinance, he shall notify the City Council of said offer, in writing. The Council shall thereupon enter into negotiations for the purchase of said property by the City of Willmar, and in the event

that the parties and the city shall not be able to agree on the terms thereof, the Council shall institute condemnation proceedings for the acquisition of said property for city parking purposes. In the making of the appraisal under said condemnation proceedings, the appraisers shall not take into consideration that the said property is zoned for Automobile Parking purposes, but shall consider the value of said property as if the same have been zoned for purposes available to the immediately surrounding area, or if for two or more purposes, as if it were zoned the same as property that borders the most of its perimeter.

"c. In the event that the City Council shall fail to enter into negotiations with the said owner within a period of thirty (30) days after the proposal by said owner to do so, or having entered into negotiations shall fail to complete the same or institute condemnation proceedings within a period of ninety (90) days from the making of said proposal to negotiate by the said owner, then and in that event the provisions of this section shall be inoperative and the said owner shall be permitted to sell said tract for purposes other than parking automobiles under such provisions as shall be determined by the Planning Commission and the City Council under Special Use Permit which shall be issued therefor.

"d. The Council hereby and herewith finds that the acquisition and development of adequate off-street parking is necessary for the public safety and convenience, and to the end that the provisions of this Ordinance might be effected the provisions of Ordinance No. 405 (Special) shall be applicable and available for the purposes of this Ordinance, as well as applicable laws and statutes of the State of Minnesota."

Plaintiffs contend that the rezoning of their property would substantially decrease its value; that the rezoning was not only unreasonable but confiscatory and an unlawful invasion of the owners' property rights, causing the value of the property to be substantially diminished without its adoption offering any great or substantial benefit to the general public. They point out, furthermore, that the right of condemnation is available to the city should it seek to acquire any of this property for the purpose of establishing a public parking district in that locality.

The testimony in the case, which appears to be uncontradicted, shows that the rezoning to automobile parking will seriously affect the value of

the land by elimination of all competitive bidding on the land resulting in elimination of all commercial buyers. The testimony further indicated that automobile parking zones have no commercial value.

Plaintiffs contend that defendant city cannot under the guise of the proposed zoning regulation confiscate the property of a private individual or inflict substantial injury on the owners of the property without just compensation, and that the ordinance violates Minn. Const. art. 1, § 13, and U. S. Const. Amends. V and XIV. See, 16 Am. Jur. (2d) Constitutional Law, § 361. Minn. Const. art. 1, § 13, provides:

"Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured."

■ The trial court found that the reclassification of the land would substantially decrease its value. The evidence herein supports the court's finding. See, 16 Am. Jur. (2d) Constitutional Law, § 366.

■ The power to regulate by zoning may not be applied to appease the city's desire to restrain the natural operation of the laws of economics. A zoning reclassification cannot be used as a tool to depress the market value of the property so as to defeat the payment of a just price when the land is taken. See, 101 C. J. S., Zoning, § 29.

"As used in the various guaranties against the taking of property without due process of law, the term 'property' embraces every kind of property or right over which a person may have exclusive control or dominion, and includes all character of vested rights." 16A C. J. S., Constitutional Law, § 599(b).

■ It is well settled that the right to sell one's property to anyone at any time for any price is a property right. See, 16A C. J. S., Constitutional Law, § 599; 16 Am. Jur. (2d) Constitutional Law, § 335.

Defendant city concedes that the ordinance would assure to it the first opportunity to purchase, and if no settlement is reached, then, and then only, will it take by condemnation. This court supports the policy that an amendment to a comprehensive zoning plan under the police powers which results in a total destruction or substantial diminution of value of the property affected thereby without just compensation therefor constitutes a taking of the property without due process. Alexander v. City of

Minneapolis, 267 Minn. 155, 125 N. W. (2d) 583. See, also, Olsen v. City of Minneapolis, 263 Minn. 1, 115 N. W. (2d) 734; Pearce v. Village of Edina, 263 Minn. 553, 118 N. W. (2d) 659.

Defendant cannot by ordinance remove from plaintiffs the right to sell to anyone for any price they may see fit. Under the provisions of the proposed ordinance, should plaintiffs wish to sell—and this whether they have prospective buyer or not—they must notify the city in writing and it would have the first chance to buy. This invades a property right which an owner has to sell his property.

■ Zoning ordinances are constitutional as a valid exercise of the police power when reasonably related to the public health, safety, morals, or general welfare. Euclid v. Ambler Co. 272 U. S. 365, 47 S. Ct. 114, 71 L. ed. 303, 54 A. L. R. 1016; Kiges v. City of St. Paul, 240 Minn. 522, 62 N. W. (2d) 363. Zoning ordinances are, of course, subject to the usual legal and constitutional limitations and requirements affecting other police measures, including those of reasonableness and freedom from arbitrariness or discrimination. Kiges v. City of St. Paul, *supra*; State ex rel. Beery v. Houghton, 164 Minn. 146, 204 N. W. 569, 54 A. L. R. 1012. Briefly, a zoning ordinance must be reasonably within the city's scope of authority, must be reasonable and free from unlawful discrimination, and must be enforced in a reasonable manner. Rhyne, Municipal Law, § 32-2, p. 814.

In Minnesota the authority to adopt and amend comprehensive municipal planning ordinances is found in Minn. St. 462.351 to 462.364. The ordinance in question was adopted under Minn. St. 1961, § 462.01, which has since been repealed (L. 1965, c. 670, § 14) but was similar to the statutory authority now in effect.

■ Clearly, the proposed ordinance herein restricts the use of property by the property owners.[1] The United States Supreme Court in Pennsylvania Coal Co. v. Mahon, 260 U. S. 393, 415, 43 S. Ct. 158, 160, 67 L. ed. 322, 326, stated the general rule as follows:

---

[1] Vernon Park Realty, Inc. v. Mt. Vernon, 307 N. Y. 493, 121 N. E. (2d) 517; Forster v. Scott, 136 N. Y. 577, 32 N. E. 976, 18 L. R. A. 543; Arverne Bay Const. Co. v. Thatcher, 278 N. Y. 222, 15 N. E. (2d) 587, 117 A. L. R. 1110.

"The general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking. * * * We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change."

The trial court in its memorandum stated:

"It is the opinion of the Court that this whole procedure violates due process of law and violates the prohibition against damaging or taking private property for public use without compensation. The city can, of course, acquire the property for public parking by condemnation proceedings."

This determination by the court below must be sustained. Affirmed.