Dwight E. HOLAWAY, et al.,
Respondents,

v.

CITY OF PIPESTONE, Appellant.

No. 46950.

Supreme Court of Minnesota.

July 7, 1978.

David Trygstad, Pipestone, League of Minnesota Cities, Stanley G. Peskar, St. Paul (amicus curiae), for appellant.

1. Section 3.9 provides: "Annexed territory shall be placed in the 'R-1' Zoning District until such time as a detailed study determining its proper use district is undertaken."

William P. Scott, Pipestone, for respondents.

KELLY, Justice.

Defendant, City of Pipestone (city), appeals from a judgment of the district court mandating it to initiate condemnation proceedings with respect to plaintiffs' land. We reverse and remand.

Plaintiffs purchased a 29-acre tract of land, including a house, near Pipestone, Minnesota, in December 1973 for $60,000. In the spring of 1974, plaintiffs requested permission from the city to connect to its water system. Permission was granted on the condition the property be annexed by the city. After annexation, the property automatically was zoned R-1 (single-family residential district [low density]) pursuant to Zoning Regulations of the City of Pipestone, § 3.9.[1]

In June 1975, plaintiffs entered into a contract to sell 1 acre of the tract to a third party for $2,000 and granted the purchaser an option to buy 4 additional acres at the same price per acre. The purchaser applied to the city for a building permit for a single-family dwelling. He was informed that the city intended to rezone plaintiffs' property, and his application was denied. The parties cancelled the contract.

The application for the building permit directed the city's attention to plaintiffs' land, which had not been studied for rezoning since its annexation. In August 1975, the city rezoned the property I-2 (general industry district) over plaintiffs' objections and informed plaintiffs that if more than 50 percent of their home were destroyed they would not be permitted to rebuild. This position evidently relied on § 3.3(4) of the zoning ordinance, regulating nonconforming uses.[2]

2. Section 3.3(4) provides: "Whenever a lawful non-conforming structure shall have been damaged by fire, flood, explosion, earthquake, war, riot, or act of God, it may be reconstructed and

Plaintiffs' land is triangular, bounded on the south by the city and by farmland, on the west by city property used in operation of the municipal airport, and on the east by property zoned I–1 (limited industry district), although no industrial buildings adjoin the property. The airport has operated since the 1940's, and the industrial park was established in the mid 1950's. Plaintiffs farm 20 acres of the property and also raise an exotic breed of sheep there.

Plaintiffs commenced this mandamus action in August 1975 to compel the city to initiate condemnation proceedings to compensate them for the diminished value of their property resulting from the rezoning. At that time, the city was considering condemning a portion of the property in a planned expansion of the airport. When the trial concluded, the city still contemplated condemnation of the northern portion of plaintiffs' land. The district court, sitting without a jury, found that the property had been reduced in market value by at least $18,000. Since the rezoning "substantially affected" the property's market value, the district court concluded that a taking had occurred and granted the writ.

■ Plaintiffs assert that the diminution in value of their property constituted a taking entitling them to damages under Minn.Const. art. 1, § 13. No authority sustains this assertion. In *Almquist v. Town of Marshan*, 308 Minn. 52, 69, 245 N.W.2d 819, 828 (1976), we noted: "It is too fundamental for citation of authorities that rezoning, which is otherwise valid, does not give rise to an action for damages because the land in question may be more valuable for some other purpose." Accord, *Beck v.*

*City of St. Paul*, 304 Minn. 438, 449, 231 N.W.2d 919, 925 (1975). To establish "an unconstitutional taking a landowner must demonstrate that he had been deprived, through governmental action or inaction, of all the reasonable uses of his land." *Czech v. City of Blaine*, Minn., 253 N.W.2d 272, 274 (1977). Mere diminution in market value is not such a demonstration, when a reasonable use of the land is permitted under the zoning ordinance and currently undertaken by plaintiffs.[3] The result would be similar under the Federal Constitution. See, *Euclid v. Ambler Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926).

It is not evident from the district court's memorandum whether it relied solely on the diminution in market value to grant plaintiffs relief. The district court quoted the following language from our decision in *Sanderson v. City of Willmar*, 282 Minn. 1, 5, 162 N.W.2d 494, 497 (1968): "A zoning reclassification cannot be used as a tool to depress the market value of the property so as to defeat the payment of a just price when land is taken." See, also, 1 Anderson, American Law of Zoning (2 ed.) § 7.30; 8 McQuillan, Municipal Corporations (3 ed. rev.) § 25.39. Because of the planned expansion of the airport and its proximity[4] to plaintiffs' property, the principle quoted from *Sanderson* might have been the basis of the district court's decision. The district court failed, however, to make findings on this theory, and so we must remand the case.

■ We reverse because a writ ordering the initiation of condemnation proceedings is an inappropriate remedy to grant to

used as before if it be reconstructed within twelve (12) months after such calamity, unless the damage to the building or structure is fifty per cent (50%) or more of its fair market value, as determined by the Building Inspector, and approved by the City Council, in which case the reconstruction shall be for a use in accordance with the provisions of this Ordinance."

3. Agricultural uses are permitted in every zoning classification. Moreover, provisions of the zoning ordinance exempt farming operations from its requirements. Zoning Regulations of the City of Pipestone, §§ 3.10 and 9.4. Wheth-

er or not agricultural uses are a reasonable use of the land is questionable considering the size of the tract; however, this is an issue to be passed upon by the trial court. The city indicated at trial and now contends that there is "no prohibition on plaintiffs reconstructing their home should it be * * * destroyed so long as [their] basic operation remain[s] agricultural." We agree.

4. See, *Alevizos v. Metropolitan Airports Comm.*, 298 Minn. 471, 216 N.W.2d 651 (1974); *Kissinger v. City of Los Angeles*, 161 Cal. App.2d 454, 327 P.2d 10 (1958).

a plaintiff who succeeds in establishing that a zoning ordinance has strayed beyond mere regulation. Instead, we think such an ordinance should be declared invalid and its enforcement enjoined. Note, 26 Stan.L. Rev. 1493. See, *Fred F. French Investment Co. Inc. v. City of New York*, 39 N.Y.2d 587, 385 N.Y.S.2d 5, 350 N.E.2d 381, appeal dismissed, 429 U.S. 990, 97 S.Ct. 515, 50 L.Ed.2d 602 (1976).

This case involves the situation where plaintiffs agreed to have their land annexed to the city in return for being allowed to connect with the city water system. The land was zoned automatically for residential use at the time of annexation. The city never warned plaintiffs that their land might be zoned for some purpose other than residential use even though the possibility existed that the city might want the land for airport expansion, including air easements, and therefore would discourage any construction thereon in order to reduce the cost to the city for such acquisition. In most city zoning ordinances, residential construction is allowed on any land zoned for commercial or industrial use, even though the latter uses are not permitted on lands zoned for residential use. This is because residential use is considered a preferential use over any other purpose for land. The disparity in land values before and after the zoning, while not in any way conclusive, may be considered with other evidence in making the determination of whether the action was arbitrary and capricious. In this case there was adequate evidence for the district court to find that the amendments to the ordinance in question, adopted by the city council, were arbitrary and capricious and therefore, unconstitutional. Under the amended complaint, the district court could have so found and then enjoined enforcement of the ordinance and ordered the building permits to issue for construction of the residences. By insisting on inverse condemnation, plaintiffs have not exhausted their remedies.

The amicus curiae brief of the League of Minnesota Cities urges a holding that no right of inverse condemnation exists where the statutory remedy of enjoining enforcement is available. We decline to so hold. It may be possible that a zoning ordinance can so interfere with an owner's use of his land as to constitute a taking thereof where inverse condemnation would lie. But the facts of this case do not justify such relief.

The case is therefore remanded to the district court for a determination as to whether the facts justify a finding that the amendments to the city ordinance are invalid. If the district court so finds, the appropriate relief is to enjoin enforcement of the ordinance and to order issuance of the building permits in question.

Reversed and remanded.