**COUNTY OF RAMSEY, petitioner, Respondent,**

v.

**Joseph STEVENS, Appellant,**

**Northern States Power Company et al., Respondents-Below.**

**No. 48537.**

Supreme Court of Minnesota.

Sept. 14, 1979.

---

Scanlan & Carlson and John J. Scanlan,
St. Paul, for Stevens.

William B. Randall, County Atty., and Steven C. DeCoster, Asst. County Atty., St. Paul, for Ramsey County.

LeVander, Gillen, Miller & Magnuson and Paul A. Magnuson, South St. Paul, for Northern States Power et al.

Heard before OTIS, ROGOSHESKE, and MAXWELL, JJ., and considered and decided by the court en banc.

OTIS, Justice.

Joseph Stevens appeals from the judgment of the Dakota County District Court awarding him damages in a condemnation proceeding against certain of his real property, and from an order denying his motion for a new trial. Appellant seeks a new trial on the ground that he was precluded from showing at trial, relative to his damages, (1) that when his property was actually, but unofficially, "taken," the highest and best use under the zoning ordinance was a mobile home park, or (2) in the alternative, that even if the taking did not occur until the formal condemnation proceedings, the enactment of an ordinance by Lilydale prohibiting mobile home park development was invalid and the highest and best use remained a mobile home park. We affirm.

The subject property is five undeveloped acres in Lilydale in Dakota County on the Mississippi River. Appellant purchased part of the property in 1962 and the remainder in 1971. He moved onto the property in 1965 at which time he observed 12 mobile homes and 18 permanent homes in the vicinity. While he resided on the property, the number of mobile homes increased to 103, and the population increased to 664. The area was flooded by the Mississippi River in 1965, 1969, and 1973, and few mobile homes remained by 1973. In 1968 appellant started to build up his property, using demolition materials from downtown St. Paul reconstruction. In 1971, after purchasing the remaining acres of his property, appellant entered into a contract under which he was to be paid a lump sum and monthly sums until 1974 in exchange for the right of the other party to dump demolition materials such as dirt, concrete, burned stumps, and wood onto the property. Appellant did not believe that he ever received the money, and not all of the contract terms were performed by the other party.

Appellant obtained permits from Lilydale in 1964 and 1970 to build wooden frame structures on the property, but decided not to build because of his understanding that the property would eventually be condemned. He was also issued a mobile home permit, which he used for his residence. On June 3, 1971, the Lilydale Village Council adopted a resolution reflecting a "very resistive attitude based on the results polled during the floods" towards development of lower Lilydale. In September of 1971, the chairman of the Metropolitan Council wrote to the mayor of Lilydale, reminding him that Lilydale had agreed to use the lowlands as a park and not to permit further development. A Lilydale trustee responded to the letter, explaining that even though appellant had nearly finished filling his property, he had been informed by Lilydale that he would not be granted permits for mobile homes.

On September 22, 1972, Dakota County, Ramsey County, and Lilydale entered into a Joint Powers Agreement pursuant to statute for the purpose of creating a park in the area including appellant's property. Later that fall, the Ramsey County Director of Parks and Recreation asked that Lilydale halt further filling operations. In November of 1974, the Ramsey County Administrator expressed his concern that improvements to real property in Lilydale be kept to a minimum. The Lilydale mayor replied that Lilydale shared his concern and referred to a resolution adopted on June 21, 1972, that established "a very restrictive policy towards improvement of real property . . . in anticipation of acquisition by Ramsey County." In September of 1974, the Lilydale Council informed Ramsey

County that appellant had applied for 44 building permits. Ramsey County's Director of Parks and Recreation requested that Lilydale officials "take no action that will unnecessarily increase the cost of any property in Lilydale," announcing that the Lilydale Park Project had been approved by the Metropolitan Council for funding as a regional park and that acquisition of the property was commencing.

That same fall Lilydale was informed by the Federal Insurance Administration of the United States Department of Housing and Urban Development that it had failed to adopt flood plain management ordinances, which were prerequisites to eligibility for flood insurance. In 1971 Lilydale had applied for flood insurance as one of the Minnesota communities subject to recurrent flooding. Lilydale was advised that noncompliance would mean that no flood insurance could be sold or renewed in the community. Lilydale's Council apprised the Federal Insurance Administration of the park project, explaining that no further building permits were being issued and that by the end of 1975 all purchase offers would be made. The Pool and Yacht Club of Lilydale, however, was excluded from the park project and, faced with projected spring flooding, requested Lilydale to enact a flood plain ordinance so that it could obtain flood insurance. Upon Lilydale's failure to do so, the Pool and Yacht Club brought a mandamus action in district court to compel the enactment of a flood plain ordinance. Appellant, who was then a member of the Lilydale City Council, was a party to the action. Finding that Minn.St. 104.08 imposed a mandatory duty upon Lilydale to participate in the national flood insurance program and that the Pool and Yacht Club faced imminent flooding with no possibility of insurance protection, the district court ordered the Council to enact an appropriate ordinance within 72 hours. The Council complied by enacting Ordinance No. 69 on April 10, 1975, but appealed the district court's order to this court on April 23, 1975. On May 15, 1975, three of the five Council members voted to enact Ordinance No. 70, which repealed Ordinance No. 69.

On June 4, 1975, the condemnation proceeding was commenced. The court-appointed commissioners' award of $72,000 in damages to appellant was filed on September 22, 1975, from which both appellant and Ramsey County appealed to the district court. On November 24, 1975, the Council enacted Ordinance No. 72, which allowed the issuance of mobile home permits, and the next day appellant was issued 44 mobile home permits for the property. On December 5, 1975, Ramsey County took possession of appellant's property.

In January of 1976, the Council, composed of several new members, dismissed its appeal to this court. Appellant, who was still on the Council, opposed complete dismissal, arguing that he had been involved in the mandamus action both individually and as a council member and that he was entitled to appellate review of the writ of mandamus. This court denied appellant's petition, holding that appellant was involved only in a representative capacity.

Prior to commencement of the jury trial on the parties' appeals from the commissioners' award, appellant brought the above facts before the district court on a motion for a finding that Ordinance No. 69, which prohibited mobile home development, should not be considered by the jury. The court found that Ordinance No. 69 was in effect at the time of taking.

The jury trial commenced on August 24, 1977, at which time appellant moved that Ordinance No. 70, which repealed Ordinance No. 69, should be submitted to the jury relevant to the question of highest and best use. Appellant argued again that Ordinance No. 69 had been invalidly enacted. Finding the validity of Ordinance No. 69 to be res judicata but also addressing the merits, the trial court ruled against appellant and excluded from evidence Ordinance No. 70 and the evidence that appellant had been issued 44 mobile home permits. Appellant

was, however, allowed to testify as to his original plans for the property and its historical use.

Two real estate appraisers testified on behalf of appellant. One appraiser valued the condemned property at $148,500 on the basis that the highest and best use of the property was as a 43-lot mobile home park development. Also basing his opinion on the highest and best use as a mobile home park, the second appraiser valued the property at $96,800. Appellant testified that he planned to use the property for a bar-restaurant, a mobile home park and a marina. It appeared that passage from the river to Pickerel Lake, the site intended for the marina, was nearly impossible, however, due to natural filling over the years.

Ramsey County's expert witnesses testified that appellant's property was topographically and geologically unsuitable for development. The uncontrolled fill deposited on the property contained organic matter and was predicted to settle between one and five feet. Improper permeation prevented adequate sanitation. The access roads, if not the property itself, were subject to periodic flooding. Considering this evidence, the real estate appraisers concluded that, regardless of zoning, the property could not be developed for a mobile home park at a profit. The two appraisers found the highest and best use of the property to be open space and storage, one valuing the property at $35,000 and the other attaching a value of $38,800.

The jury awarded appellant $38,000 damages. Appellant moved for a new trial on the ground that the trial court erred in finding Ordinance No. 69 to be valid. His motion was denied and this appeal followed.

At issue is the adequacy of the damages awarded appellant for the condemnation of his land. Appellant sought to maximize his damages by convincing the jury that the highest and best use of his condemned property was that of a mobile home park development. The trial court, however, instructed the jury that it was to consider the testimony in light of the applicable zoning ordinance, which in this case prohibited a mobile home park absent a variance. Because of this instruction, appellant claims that the jury awarded inadequate damages and that he is entitled to a new trial. He supports his claim with two legal arguments, both of which were rejected by the trial court prior to trial.

1. First, appellant contends that the date of taking was not on September 22, 1975, when the commissioners' award was filed, but on September 28, 1972, when Lilydale, Dakota and Ramsey Counties formally agreed to acquire appellant's property sometime in the future. This argument is not persuasive. The joint powers agreement has no particular significance other than to demonstrate an intent to create a park. The agreement itself did not effect any form of deprivation or invasion of appellant's property rights.

Appellant asserted no claim that Lilydale unlawfully denied issuance of mobile home permits, an action that can be construed as taking under certain circumstances. See, e. g., *Czech v. City of Blaine*, 253 N.W.2d 272 (Minn.1977). While it is true that Lilydale refused to permit new development, including the filling of lowlands and issuance of mobile home permits, this decision preceded the formal agreement. As early as June 3, 1971, Lilydale resolved not to issue permits for mobile homes because of the flooding problem in the area, and later in recognition of the plans to establish a park. At the time when the zoning laws permitted mobile home development, appellant, however, never sought to compel issuance of mobile home permits, even though he was warned as early as 1971 that he would not be granted permits and was denied permits in 1974.

In light of this history, the trial court in the formal condemnation properly refused to push back the date of taking to 1972 in response to appellant's instructions of inverse condemnation made solely to bring the 1972 ordinance, which permitted mobile home park development, before the jury.

2. Appellant next claims that the zoning Ordinance No. 69 that prohibited mobile home park development was not validly repealed.

The initial question relevant to this issue raised by respondent is whether appellant is collaterally estopped from attacking the validity of the ordinance by a prior judgment. The trial court found that the validity of the ordinance, with respect to its enactment not its effect, was res judicata, for the appeal to this court from the order for enactment had been dismissed.

■ For appellant to be estopped as to any issue raised and determined in the prior litigation, respondent must show an identity of parties. See, *Sachs v. Jenista*, 296 Minn. 535, 210 N.W.2d 45 (1973). Appellant argues that he was involved only as a Council member, or in a representative capacity as we stated in dismissing his appeal. Thus, he contends he is now entitled as an individual to appellate review of his claims.

■ Appellant is barred by collateral estoppel if he demonstrated a "controlling participation" and "active self-interest" in the earlier litigation. See, *Margo-Kraft Distributors v. Minneapolis Gas Co.*, 294 Minn. 274, 200 N.W.2d 45 (1972). While his "active self-interest" in the earlier litigation is demonstrated by the great similarity of his arguments presented then and now, he did not have a "controlling participation" in the preceding action. Since appellant was only acting in a representative capacity in the first action, as we found, he cannot be deemed to have prosecuted his own interests fully. Thus, he is not now estopped from raising the issues in his individual capacity in this action.

Although the trial court found appellant to be barred by collateral estoppel from reasserting the invalidity of Ordinance No. 69, it nevertheless made extensive findings of fact on the merits, which are available for our review.

Appellant challenges Ordinance No. 69 in two respects: that its enactment was inval- id, and that it is unconstitutional. Appellant argues that the enactment of Ordinance No. 69 was invalid for two reasons: (1) that the district court had no jurisdiction to order enactment of a discretionary ordinance, and (2) that enactment violated the public notice and hearing requirements of Minn.St. 462.357.

The trial court found that the district court properly had issued a writ of mandamus to the Lilydale Council on the ground that Lilydale had a nondiscretionary duty to enact a flood plain ordinance.

■ Based on our review of applicable state and Federal law, we conclude that Lilydale did have a legal duty to enact a flood plain ordinance. Thus, an action in mandamus to compel performance was proper. Cf., *LaFayette Land Co. v. Village of Tonka Bay*, 305 Minn. 461, 234 N.W.2d 804 (1975).

Minn.St. 104.08 provides:

"Flood Insurance. Subdivision 1. It is the policy of the state of Minnesota that all local governmental units subject to recurrent flooding participate in the national flood insurance program, Public Law 90–448, and acts amendatory thereof or supplementary thereto, so that the people of Minnesota may have the opportunity to indemnify themselves from future flood losses through the purchase of this insurance.

"Subd. 2. Within 90 days after May 20, 1973 the commissioner shall prepare a list of local governmental units having areas subject to recurrent flooding and shall notify each local governmental unit included on the list of his findings. If a local governmental unit objects to the commissioner's findings, it shall submit evidence supporting its objections within 45 days after receiving the commissioner's notification. Thereafter the commissioner shall accept or reject the findings of each local governmental unit submitting evidence, shall prepare an amended list of local governmental units having

areas subject to recurrent flooding, and shall notify each local governmental unit of its inclusion on the amended list.

"Subd. 3. Within 120 days after receiving notice of inclusion on the amended list, each local governmental unit shall apply for participation in the national flood insurance program in the manner prescribed by federal laws and regulations."

Lilydale was included on the list of governmental units subject to recurrent flooding and failed to object to its inclusion in the manner provided by the statute. Consequently, Lilydale was obligated under subdivision 3, to apply, and did apply in 1971, for participation in the National Flood Insurance Program, 42 U.S.C.A. §§ 4001 et seq. No flood insurance coverage was provided unless the appropriate public body had adopted adequate land use and control measures, which the Secretary of Housing and Urban Development determined to be consistent with the comprehensive criteria for land management and use under the Federal statute. 42 U.S.C.A. § 4022. Pursuant to this statute, Lilydale was informed that it must enact a flood plain ordinance. While some latitude as to the specific contents of the flood plain ordinance may have existed, Lilydale, having made no objection to its status under § 104.08, had no discretion whether or not to enact an ordinance.[1] Because the act of adopting a flood plain ordinance was mandatory, the district court did not err in issuing the writ of mandamus.

■ Appellant next challenges enactment of ordinance on the ground that the notice and public hearing requirements of Minn.St. 462.357[2] were not satisfied. Appellant frames this issue to be whether or not a district court has the inherent or plenary power to order the enactment of a zoning ordinance in contravention of a Minnesota statute. We have said that inherent judicial power may be invoked to meet "the practical necessity of ensuring the free and full exercise of the court's vital function—the disposition of individual cases to deliver remedies for wrongs and 'justice freely and without purchase; completely and without denial; promptly and without delay, conformable to the laws.'" *In re Clerk of Lyon County Courts*, 308 Minn. 172, 177, 241 N.W.2d 781, 784 (1976). The test is not relative needs or judicial wants, but practical necessity in performing the judicial function with due consideration for equally important executive and legislative functions. 308 Minn. 182, 241 N.W.2d 786.

■ In the case before us, the district court was petitioned for relief no more than days before projected severe flooding. An order to enact an ordinance in accordance with statutory hearing and notice provisions would have been tantamount to a denial of relief because of the imminent flooding. Thus, conformity with the due process provisions of the statute had to be balanced against the right of the aggrieved party to immediate relief. In *Pilgrim v. City of Winona*, 256 N.W.2d 266, 270 (Minn. 1977), we interpreted the legislative intent in enacting § 462.357 to establish a detailed procedure so that the rights of landowners would be protected from arbitrary or detrimental zoning. In this case, however, the enactment of a flood plain ordinance was judicially determined to be nondiscretionary in a full adversary hearing. A public hearing, which is otherwise effective to influence a council's decision where discretionary acts are involved, could not have altered this determination. The due process re-

1. In addition, Minn.St. 104.04 provides that a local community shall submit a flood plain ordinance to the Minnesota Commissioner of Natural Resources. If the local community fails to do so, the commissioner shall adopt an ordinance applicable to that community. See, Minn.St. 104.04, subd. 5. The intent of the statute is to restrict new development. See, Minn.St. 104.03, subd. 2.

2. Minn.St. 462.357, subd. 3, provides that a zoning ordinance shall not be amended or adopted until a public hearing with ten days prior notice has been held.

quirements of § 462.357 should be excused with extreme reluctance and only in the unusual case. This is such a case.

Appellant also argues that Ordinance No. 69 was an unconstitutional taking of his property. According to appellant, Ordinance No. 69 was enacted for the purpose of depressing the market value of his property so that the cost of acquisition would be less. If appellant's contention were true, the ordinance would be unconstitutional. See, e. g., *Holaway v. City of Pipestone*, 269 N.W.2d 28 (Minn.1978); *Sanderson v. City of Willmar*, 282 Minn. 1, 162 N.W.2d 494 (1968). In the cases cited by appellant in support of his argument, the intent in rezoning was to depress market value. See, *Business Ventures, Inc. v. Iowa City*, 234 N.W.2d 376 (Ia.1975); *Robyns v. City of Dearborn*, 341 Mich. 495, 67 N.W.2d 718 (1954); *Long v. City of Highland Park*, 329 Mich. 146, 45 N.W.2d 10 (1950); *Kissinger v. City of Los Angeles*, 161 Cal. App.2d 454, 327 P.2d 10 (1958); *Board of Com'rs of State Inst. v. Tallahassee B. & T. Co.*, 108 So.2d 74 (Fla.App.1958). In this case, however, the intent in enacting Ordinance No. 69 was not for the purpose of depressing market value, even though it may have had that effect. The purpose was stated as follows:

"(1) A portion of the lands within the regulatory jurisdiction of Lilydale is subject to recurrent flooding by overflow of the Mississippi River causing hazard to life and property, disruption of commerce and governmental services, unsanitary conditions, and the interruption of transportation and communications, all of which are detrimental to the health, safety, welfare, and property of the occupants of flood plain areas and the people.

"(2) It is the purpose of this Ordinance to promote the public health, safety and general welfare by minimizing the losses described in Section II(1), and qualifying the City for flood insurance."

As a municipality, Lilydale had the right to exercise its powers to amend a zoning ordinance where demanded by public interest considerations. The fact that certain property values might decline was not a test of validity of the rezoning. The general welfare of the public is paramount in importance to the pecuniary stake of the individual. *Beck v. City of St. Paul*, 304 Minn. 438, 449, 231 N.W.2d 919, 925 (1975). As long as the land values are not intentionally frozen or depressed, nor the property deprived of all suitable uses, rezoning is a legitimate exercise of the municipality's police powers. See, *Holaway v. City of Pipestone, supra*, 269 N.W.2d at 30. Accord, *Scott v. State, by State Highway Commission*, 23 Or.App. 99, 541 P.2d 516, 522 (1975). Unlike *Dooley v. Town Plan & Zon. Com'n of Town of Fairfield*, 151 Conn. 304, 197 A.2d 770 (1964), where a flood plain ordinance was stricken as unreasonable and confiscatory, this appellant has not demonstrated that rezoning was unreasonable or that his property was rendered practically unusable. To the contrary, respondent proved that because of periodic flooding, settlement of land fill, and unsuitable soils, the highest and best use of appellant's property was limited to open space or general storage of equipment.

Finally, there is no merit to appellant's claim that the trial court improperly excluded evidence of Ordinances 70 and 72. Appellant attempted to use Ordinance No. 70, which repealed Ordinance No. 69, and Ordinance No. 72, which reinstated mobile homes as a permitted use, as evidence of a probability that the property could be rezoned to permit mobile homes. The trial court properly prohibited this showing. Ordinance No. 70 was not valid, since it received one less vote than necessary for its passage. This is conceded by appellant. Furthermore, the validity of Ordinance No. 72 was questionable, for any rezoning where the property is governed by a flood plain ordinance must be approved by the Commissioner of Natural Resources. See, Minn.St. 104.04, subd. 4. Evidence of value for uses prohibited by an ordinance, in this

case mobile homes, may be introduced and considered only where there is evidence showing a reasonable probability that the ordinances will be changed in the near future. *State, by Lord v. Pahl*, 254 Minn. 349, 95 N.W.2d 85 (1959). Appellant failed to make such a sufficient showing in light of § 104.04, subd. 4, to justify admission of Ordinances No. 70 and 72 and the permits.

Nevertheless, appellant was allowed to present considerable testimony as to the historical use of the property and its potential value as a mobile home park development. He also argued to the jury the reasonable probability of rezoning. Thus, in spite of the exclusion of Ordinances No. 70 and 72 and the subsequent issuance of the permits from evidence, the jury could have accepted the view that the highest and best use of the property under a *variance* was as

a mobile home park. The jury's failure to do so and its award of damages are well supported by the evidence.

Affirmed.

TODD, J., took no part in the consideration or decision of this case.